PEOPLE v WILLIAMS

Docket No. 299809. Submitted September 8, 2011, at Grand Rapids. Decided September 15, 2011. Approved for publication October 25, 2011, at 9:05 a.m. Leave to appeal denied, 491 Mich 854.

Robert J. Williams, Jr., already serving a jail sentence for domestic violence, was convicted of being a prisoner in possession of a controlled substance and delivery of less than five kilograms of marijuana in the Berrien Circuit Court. The court, Angela M. Pasula, J., sentenced defendant to 34 months to 30 years' imprisonment for the prisoner-in-possession conviction and 34 months to 15 years' imprisonment for the delivery conviction. The court ordered that the sentences be served consecutively to each other and to the domestic-violence sentence. The court further ordered that defendant be given credit for 27 days that he spent in jail after the expiration of the domestic-violence sentence and before his sentencing on the prisoner-in-possession and delivery convictions, but the court only applied the credit toward the prisoner-in-possession sentence. Defendant appealed.

The Court of Appeals *held*:

1. The Double Jeopardy Clause bars the imposition of multiple punishments for the same offense unless multiple punishments are specifically authorized by the Legislature. Absent clear legislative intent to impose multiple punishments, a court must determine whether the sentences were imposed for the same offense as determined by the statutory elements of the offenses. If each offense requires proof of a fact that the other does not, they are separate offenses notwithstanding a substantial overlap in the proof offered to establish the crimes. To prove a charge of prisoner in possession of a controlled substance, a prosecutor must show that the individual was a prisoner, but an individual need not be a prisoner to be convicted of delivery of less than five kilograms of marijuana. Further, a person need not deliver a controlled substance to be a prisoner in possession. Thus, the offenses of prisoner in possession and delivery of less than five kilograms of marijuana each require proof of a fact that the other does not, and a person may be convicted of both offenses based on the same transaction.

2. If the issue is properly preserved, a new trial may be granted on the basis that the evidence preponderates heavily against the verdict and a serious miscarriage of justice would occur if the conviction were allowed to stand. A challenge to the sufficiency of the evidence need not be preserved. The evidence will be reviewed in a light most favorable to the prosecution to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. In this case, the evidence was more than sufficient. The evidence established that the defendant had bragged to other inmates that he could supply them with marijuana in the jail. He then approached another inmate and told him that he would trade marijuana for candy. The other inmate reported the offer to jail officials who arranged for a controlled exchange. Before the transaction, the officials searched the informant to ensure that he did not already possess marijuana. The informant then exchanged candy for a package which was found to contain marijuana. A surveillance camera recorded the transaction. Direct view of the exchange by a police officer was not required.

3. Defendant failed to support his claim that he did not receive a fair trial because two members of the jury were biased given that the challenged jurors were excused before the trial.

4. A consecutive sentence may be imposed only if specifically authorized by statute. Under MCL 768.7a(1), a person who is incarcerated in a penal or reformatory institution and who commits a crime during that incarceration which is punishable by imprisonment in a penal or reformatory institution must, upon conviction of that crime, be sentenced as provided by law. The term of imprisonment imposed for the crime must begin to run at the expiration of the term or terms of imprisonment which the person is serving or has become liable to serve. An inmate has become liable to serve a sentence only if that sentence was imposed, or the act underlying the sentence occurred, in the past. Thus, a defendant convicted of an offense committed while incarcerated for a prior offense will be given a sentence consecutive to the sentence he or she is currently serving for that prior offense. And, if the defendant has committed any offenses between his or her original sentencing offense and the new sentencing offense, the defendant's new sentence will also be consecutive to the sentences for those prior offenses. However, if an incarcerated defendant commits two offenses contemporaneously and those offenses are tried and sentenced together, the defendant has become liable to serve the sentences at the same time and the consecutive-sentencing statute is inapplicable. In this case, defendant was simultaneously

convicted of contemporaneous offenses, and the trial court improperly ordered that the sentences for his prisoner-in-possession and delivery convictions run consecutively to each other. The two sentences were required to be concurrent, although consecutive to his prior sentence for domestic violence.

5. Under MCL 769.11b, whenever any person is convicted of any crime and has served any time in jail before sentencing because of being denied or unable to furnish bond for the offense of which he or she is convicted, the trial court in imposing sentence must grant credit against the sentence for the time served in jail prior to sentencing. In this case, defendant completed his domestic-violence sentence shortly after he was convicted of the controlled-substances offenses, and he continued to be incarcerated pending his sentencing on the controlled-substances offenses. Defendant was entitled to credit for the time spent in jail pending sentencing. Because the court erroneously ordered that defendant's sentences had to run consecutively, the court also erroneously applied defendant's jail credit only to the prisoner-in-possession sentence. The court should have applied the jail credit to both sentences.

6. Under prior record variable (PRV) 7 of the sentencing guidelines, MCL 777.57, a court must assess 10 points if the defendant has one concurrent or subsequent conviction. The trial court properly assessed 10 points for PRV 7 in light of defendant's concurrent controlled-substances convictions.

Affirmed in part, vacated in part, and remanded for correction of sentence.

1. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — PRISONER IN POSSESSION OF A CONTROLLED SUBSTANCE — DELIVERY OF LESS THAN FIVE KILOGRAMS OF MARIJUANA.

   The Double Jeopardy Clause bars the imposition of multiple punishments for the same offense unless multiple punishments are specifically authorized by the Legislature; absent clear legislative intent to impose multiple punishments, a court must determine whether the sentences were imposed for the same offense as determined by the statutory elements of the offenses; if each offense requires proof of a fact that the other does not, they are separate offenses notwithstanding a substantial overlap in the proof offered to establish the crimes; to prove a charge of prisoner in possession of a controlled substance, a prosecutor must show that the individual was a prisoner, but an individual need not be a prisoner to be convicted of delivery of less than five kilograms of marijuana, and a person need not deliver a controlled substance to

be a prisoner in possession; thus, the offenses of prisoner in possession and delivery of less than five kilograms of marijuana each require proof of a fact that the other does not, and a person may be convicted of both offenses based on the same transaction (US Const, Am V; Const 1963, art 1, § 15; MCL 333.7401[1], MCL 333.7401[2][d][*iii*], MCL 801.263[2]).

2. SENTENCES — CONSECUTIVE SENTENCES — PRISONS AND PRISONERS.

A consecutive sentence may be imposed only if specifically authorized by statute; a person who is incarcerated in a penal or reformatory institution and who commits a crime during that incarceration which is punishable by imprisonment in a penal or reformatory institution must, upon conviction of that crime, be sentenced as provided by law; the term of imprisonment imposed for the crime must begin to run at the expiration of the term or terms of imprisonment which the person is serving or has become liable to serve; an inmate has become liable to serve a sentence only if that sentence was imposed, or the act underlying the sentence occurred, in the past; thus, a defendant convicted of an offense committed while incarcerated for a prior offense will be given a sentence consecutive to the sentence he or she is currently serving for that prior offense; and, if the defendant has committed any offenses between his or her original sentencing offense and the new sentencing offense, the defendant's new sentence will also be consecutive to the sentences for those prior offenses; however, if an incarcerated defendant commits two offenses contemporaneously and those offenses are tried and sentenced together, the defendant has become liable to serve the sentences at the same time and the consecutive-sentencing statute is inapplicable (MCL 768.7a[1]).

*Bill Schuette,* Attorney General, *John J. Bursch,* Solicitor General, *Arthur J. Cotter,* Prosecuting Attorney, and *Elizabeth A. Wild,* Assistant Prosecuting Attorney, for the people.

*Michael A. Faraone, PC* (by *Michael A. Faraone*), and Robert J. Williams, Jr., *in propria persona,* for defendant.

Before: GLEICHER, P.J., and HOEKSTRA and STEPHENS, JJ.

PER CURIAM. While serving a 330-day jail sentence for domestic violence, defendant decided to trade marijuana for a candy bar. Unfortunately for defendant, the other inmate involved in the trade acted as an informant for jail officials. As a result, defendant was charged with and convicted of being a prisoner in possession of a controlled substance, MCL 801.263(2), and delivery of marijuana, MCL 333.7401(1) and (2)(d)(*iii*). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 34 months to 30 years' imprisonment for the prisoner-in-possession conviction and 34 months to 15 years' imprisonment for the delivery conviction, to be served consecutively to each other and to the domestic-violence sentence he was serving when he committed the new offenses.

Both through appointed appellate counsel and in a Standard 4 appellate brief,[1] defendant challenges the sufficiency of the evidence supporting his convictions, the propriety of making the prisoner-in-possession and delivery sentences consecutive to each other, and the constitutionality of convicting and sentencing him for both possession and delivery pertaining to a single underlying event. Because the prosecution presented sufficient evidence to support defendant's convictions and defendant was not twice placed in jeopardy for the same offense, we affirm defendant's convictions.

However, the trial court improperly ordered defendant's sentences for his prisoner-in-possession and delivery convictions to run consecutively to each other. As a result of that error, the court also erroneously applied defendant's 27 days of jail credit only to the prisoner-in-possession sentence. Accordingly, we vacate the judgment of sentence and remand to allow the circuit court

---

[1] See Administrative Order 2004-6, Standard 4.

to impose concurrent sentences for these two offenses
and to apply the jail credit to which defendant is
entitled to both sentences.

### I. UNDERLYING FACTS AND PROCEEDINGS

On March 17, 2010, defendant was housed in dormi-
tory 2-L at the Berrien County Jail. Defendant was
serving a 330-day sentence for domestic violence. Fel-
low inmate Jimmie Ray Bradley was assigned to work
duty and was sweeping and mopping the floors near 2-L
when he was summoned by defendant. Bradley testified
that defendant stated that he had marijuana to sell and
asked Bradley if he would advertise this information to
other inmates.

Bradley subsequently approached the jail guard and
asked to speak to Berrien County Sheriff's Deputy Juan
Mata. Bradley informed Mata about defendant's re-
quest. Mata directed Bradley to return to 2-L and ask
defendant if he still possessed the marijuana. Bradley
did so, and when he returned, he informed Mata that
defendant still possessed the marijuana and wanted to
trade it for a pack of Reese's Peanut Butter Cups from
the jail commissary.

Bradley agreed to cooperate with the deputies and
engage in a controlled buy of marijuana from defen-
dant. The deputies conducted a strip search of Bradley
to ensure that he did not have any evidence on his
person. Mata gave Bradley an unopened Reese's Peanut
Butter Cups package and instructed Bradley on where
to walk and stand to ensure that the trade was captured
by security cameras. Mata walked Bradley as close to
2-L as he could without being seen by defendant. Other
deputies remained in the jail's control booth to observe
the security footage while the sale was conducted.

Bradley approached dormitory 2-L and handed defendant the Reese's Peanut Butter Cups package through the cell bars. Defendant, in turn, handed Bradley marijuana folded inside a makeshift toilet-paper packet. Bradley turned and walked back toward Mata. Bradley showed Mata the toilet-paper packet, and Mata walked Bradley to the control room. Once inside, the deputies took the toilet-paper packet into evidence and strip searched Bradley again. Later forensic testing revealed that the toilet-paper packet contained 0.102 grams of marijuana.

Approximately 20 minutes after the transaction, a team of deputies searched the entire dormitory and searched defendant's person. In defendant's breast pocket, the deputies found scraps of toilet paper and one remaining Reese's Peanut Butter Cup inside its package. The deputies found no marijuana on defendant or in the dormitory. A canine unit was brought to the scene and the dog alerted on a book found on the ground next to defendant's bunk. However, the deputies found nothing inside the book.

Fellow inmate Vel Gene Sampson testified that defendant was "digging around in his [defendant's] stuff" on the morning of March 17, 2010. About 10 or 15 minutes later, Sampson witnessed Bradley approach the cell bars of the dormitory. Sampson saw Bradley hand a candy bar to defendant and saw defendant hand an unidentified object to Bradley. At some point, defendant bragged to the other inmates in the dormitory that "he could get them whatever they wanted" in the jail. Sampson specifically heard defendant say that he could get marijuana for other inmates.

Defendant testified on his own behalf. He denied exchanging marijuana for candy. Instead, defendant indicated that he offered to trade Bradley two commis-

sary items in the future if Bradley would get him a candy bar that day. Defendant asserted that when Bradley gave him the candy bar, he merely shook Bradley's hand and did not give him marijuana. Moreover, defendant stated that he did not know Bradley and, therefore, would not have trusted Bradley to conduct such an exchange. Rather, if defendant had wanted to trade marijuana, he would have contacted another inmate assigned to work duty, one he had known for almost 40 years.

Ultimately, a jury disbelieved defendant's version of events and convicted defendant as charged. The court subsequently sentenced defendant to two separate terms of imprisonment for the delivery and prisoner-in-possession convictions. The court ordered that those sentences be served consecutively to each other and to the domestic-violence sentence that defendant was serving at the time of the new offenses. The Michigan Department of Corrections terminated defendant's jail sentence for the domestic-violence conviction on June 15, 2010, four days after the jury trial convictions for prisoner in possession and delivery. At the July 12, 2010 sentencing, the court awarded defendant 27 days of jail credit for time served since the June 15 termination of his domestic-violence sentence. However, the court applied that credit only to the prisoner-in-possession sentence. Defendant now appeals his convictions and sentences.

## II. DOUBLE JEOPARDY

Through his appellate attorney, defendant contends that his convictions for both possession and delivery, arising from the single sale of marijuana, violate his constitutional right to be free from double jeopardy. A criminal defendant is protected from being "twice put in jeopardy" for the same offense under both US Const, Am

V and Const 1963, art 1, § 15. As a constitutional issue, we review de novo a defendant's double-jeopardy challenge. *People v Ream*, 481 Mich 223, 226; 750 NW2d 536 (2008).

Under the Michigan Constitution's Double Jeopardy Clause, a defendant is given " 'three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense.' " *Id.* at 227, quoting *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). This case involves a "multiple punishments" issue because defendant challenges the court's duplicative sentencing for what he believes was one act.

The state is generally barred from imposing multiple sentences for the same offense. However, "[w]here the Legislature does clearly intend to impose such multiple punishments, imposition of such sentences does not violate the Constitution, regardless of whether the offenses share the same elements." *People v Smith*, 478 Mich 292, 316; 733 NW2d 351 (2007) (quotation marks and citation omitted). Absent such clear legislative intent to impose multiple punishments, this Court must determine whether the sentences were imposed for the "same offense" as defined by the test in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932). *Smith*, 478 Mich at 315-316. The *Blockburger* test "focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Nutt*, 469 Mich at 576 (quotation marks and citation omitted).

Defendant confuses the double-jeopardy issue by structuring his appellate argument as if he was con-

victed of simple possession of marijuana. Defendant was actually convicted of being a prisoner in possession of a controlled substance in violation of MCL 801.263(2), which provides, "a prisoner shall not possess or have under his or her control any . . . controlled substance." To establish a defendant's guilt under MCL 801.263(2), the prosecution must prove (1) that the defendant was a prisoner who (2) possessed or controlled (3) a controlled substance.

Defendant was also convicted of delivery of less than five kilograms of marijuana in violation of MCL 333.7401(1) and (2)(d)(*iii*). The elements of delivery of less than five kilograms of marijuana are (1) the defendant delivered a controlled substance, (2) the controlled substance was marijuana or a mixture containing marijuana, (3) the defendant knew he was delivering marijuana, and (4) the delivery consisted of less than five kilograms of marijuana. See MCL 333.7401(1) and (2)(d)(*iii*); *People v Mass*, 464 Mich 615, 638; 628 NW2d 540 (2001).

The statutory offenses in this case each possess an element not found in the other. To prove a charge of prisoner in possession, the prosecution must show that the individual was a prisoner. An individual need not be a prisoner to be convicted of delivery of less than five kilograms of marijuana. Moreover, a person need not deliver a controlled substance to be a prisoner in possession. Because "each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied," *Nutt*, 469 Mich at 576 (quotation marks and citation omitted), and defendant's constitutional rights were not violated.

### III. GREAT WEIGHT OR SUFFICIENCY OF THE EVIDENCE

Defendant, through his Standard 4 brief, argues that his convictions are either against the great weight of

the evidence or based on legally insufficient evidence. Specifically, defendant contends that his guilt cannot be established given that the security footage fails to show any object passed from defendant to Bradley, the deputies were unable to see the actual transaction, and the deputies lost sight of Bradley for a few seconds on his route from 2-L to Deputy Mata following the transaction.

Defendant failed to request a new trial based on the great weight of the evidence and, therefore, this challenge is not preserved for appellate review. Generally, however, this Court would review such a challenge to determine if "the evidence preponderates heavily against the verdict and a serious miscarriage of justice" would occur if the conviction were allowed to stand. *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). A defendant need not take any action to preserve a challenge to the sufficiency of the evidence. When reviewing a defendant's challenge to the sufficiency of the evidence, we review "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). A prosecutor need not present direct evidence of a defendant's guilt. Rather, "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation marks and citation omitted).

The prosecutor presented sufficient evidence to prove that defendant delivered marijuana to Bradley. Bradley testified that, during the controlled buy, he handed defendant a candy bar and defendant handed him a small packet of toilet paper. Security video

footage showed Bradley and defendant handing each other items through the cell bars, but the images were not clear enough to identify the items. Bradley walked away from the jail dormitory and was out of Deputy Mata's sight and could not be seen by the security cameras for a matter of seconds before he reached Deputy Mata's location. Bradley then showed the toilet-paper packet to Mata. Deputies took that same toilet-paper packet from Bradley and placed it into evidence. The substance found wrapped inside the toilet paper was forensically tested and proved to be marijuana. The deputies conducted a strip search of Bradley both before and after the exchange to ensure that he could not plant evidence. Moreover, Sampson testified to witnessing the transaction between defendant and Bradley right after defendant feverishly dug through his belongings, presumptively to find something (such as marijuana). Sampson further testified that defendant bragged to his dorm mates that he could acquire marijuana for them.

This evidence more than sufficiently links defendant to the marijuana given to Bradley on March 17, 2010. Similarly, if defendant passed the marijuana to Bradley, defendant must have possessed the marijuana before the transaction. We unhesitatingly reject defendant's suggestion that a prosecutor may only establish delivery of a controlled substance if a police officer directly views an illegal narcotics exchange and can identify the item from afar as a controlled substance. Accordingly, we affirm defendant's convictions based on the evidence presented at the jury trial.

#### IV. BIASED JURY/INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief, defendant attacks trial counsel's failure to challenge two jurors who, he claims, knew Deputy Mata. Defendant asserts that these jurors

were then impaneled, resulting in a biased trial. We need not reach the substance of this challenge, however, as these jurors were, in fact, dismissed from duty and were not selected to hear the trial. Juror 19 indicated that he or she knew Mata, but had not seen him in years. Juror 25 indicated that he or she knew another Sheriff's deputy who was scheduled to be called as a witness during trial. Both of these jurors were excused before trial. Accordingly, there is no error for defendant to challenge in this regard.

### V. SENTENCING

Through appellate counsel, defendant raises several challenges to the sentences imposed for his prisoner-in-possession and delivery convictions.

### A. CONSECUTIVE SENTENCING

The trial court ordered that defendant's sentences for prisoner in possession and delivery run consecutively to each other and to the domestic-violence sentence defendant was serving when he committed the current offenses. Defendant concedes that, pursuant to MCL 768.7a(1), the court was required to make his prisoner-in-possession and delivery sentences run consecutively to his previous domestic-violence sentence. However, defendant challenges the court's decision to make the prisoner-in-possession and delivery sentences consecutive to each other. We agree with defendant's point of error.

"In this jurisdiction, concurrent sentencing is the norm. A consecutive sentence may be imposed only if specifically authorized by statute." *People v Brown*, 220 Mich App 680, 682; 560 NW2d 80 (1996) (citation omitted). MCL 768.7a(1) provides for consecutive sentencing as follows:

A person *who is incarcerated* in a penal or reformatory institution in this state, or who escapes from such an institution, and who *commits a crime during that incarceration* or escape which is punishable by imprisonment in a penal or reformatory institution in this state *shall, upon conviction of that crime, be sentenced as provided by law.* The term of imprisonment imposed for the crime *shall begin to run at the expiration of the term or terms of imprisonment which the person is serving or has become liable to serve* in a penal or reformatory institution in this state. [Emphasis added.]

The key to resolving this issue is the interpretation of the phrase "or has become liable to serve" in MCL 768.7a(1).

> Well-established principles guide this Court's statutory construction efforts. We begin by examining the specific statutory language under consideration, bearing in mind that [w]hen faced with questions of statutory interpretation, our obligation is to discern and give effect to the Legislature's intent as expressed in the words of the statute. We give the words of a statute their plain and ordinary meaning, looking outside the statute to ascertain the Legislature's intent only if the statutory language is ambiguous. Where the language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written. [*Prins v Mich State Police*, 291 Mich App 586, 589; 805 NW2d 619 (2011) (quotation marks and citations omitted; formatting altered) (alteration in original).]

Moreover, in relation to consecutive-sentencing statutes, this Court has held:

> The consecutive sentencing statutes should be construed liberally in order to achieve the deterrent effect intended by the Legislature. The statute clearly provides that the sentence shall commence "at the expiration of a term or terms of imprisonment which the person is serving or has become liable to serve . . . ." The deterrent effect of

the statute can only be achieved by imposing consecutive sentences for the crimes committed by an escapee [or incarcerated individual]. Otherwise, it is possible that a defendant may never have to serve any time for the subsequent crimes. [*People v Piper*, 181 Mich App 583, 585-586; 450 NW2d 72 (1989) (citations omitted).]

This Court has repeatedly interpreted the phrase "or has become liable to serve" in MCL 768.7a(1) as allowing a sentencing court to "stack" or cumulate a defendant's sentences for separate offenses committed while incarcerated or on escapee status. By way of example, assume a defendant was sentenced in 1981 for committing offense A, was sentenced in 1982 for committing offense B while incarcerated, and then was sentenced in 1983 for committing offense C while incarcerated. Pursuant to MCL 768.7a(1), the sentencing court would be required to make each sentence consecutive to the others. The defendant would serve his or her sentence for offense A before commencing the sentence for offense B and would serve the sentence for offense B before commencing the sentence for offense C. See, e.g., *People v McKee*, 167 Mich App 258; 421 NW2d 655 (1988) (holding that a sentence of imprisonment imposed for an escape conviction had to be served consecutively to both the defendant's original sentence for unlawfully driving away an automobile and to the defendant's pending sentence for an assault he committed while incarcerated); *People v Mandell*, 166 Mich App 620; 420 NW2d 834 (1987) (holding that the trial court properly sentenced the defendant to a term of imprisonment for his escape conviction that was to run consecutively to the sentence he was serving when he escaped, and that the trial court properly ordered that the defendant's sentence for breaking and entering a motor vehicle while an escapee was to run consecutively to his sentence for the escape conviction).

However, there is no precedent for using MCL 768.7a(1) as a means of imposing consecutive sentences for convictions arising out of contemporaneous offenses that were tried together in one trial.[2] When interpreting a statute, we must read the statutory language "in its grammatical context, unless it is clear that something else was intended." *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999). The statute states that the defendant's new prison term begins to run at the expiration of the term or terms of imprisonment that the defendant is serving or "has become liable to serve." "Has become" is the present perfect tense of the verb "become." "The present perfect tense generally indicates action that was started in the past and has recently been completed or is continuing up to the present time, or shows that a current action is logically subsequent to a previous recent action." *Deschaine v St Germain*, 256 Mich App 665, 672; 671 NW2d 79 (2003) (quotation marks and citations omitted). Accordingly, a defendant "has become liable to serve" a sentence only if that sentence was imposed (or the act underlying the sentence occurred) in the past. When the new sentence and its underlying offense are logically subsequent to the sentence for which the defendant "has become liable to serve" the court may order the new sentence to run consecutively.

Stated differently, a defendant convicted of an offense committed while he or she was incarcerated for a prior offense will be given a sentence that runs consecutively to the sentence he or she is currently serving for that prior offense. If the defendant has committed any

---

[2] Moreover, neither statute under which defendant was convicted requires or allows the court to impose consecutive, rather than concurrent, sentences. Accordingly, we cannot hold that imposing consecutive sentences for the prisoner in possession and delivery convictions would be a sentence "as provided by law." MCL 768.7a(1).

offenses between his or her original sentencing offense and the new sentencing offense, the defendant's new sentence will also run consecutively to the sentences for those interceding offenses. However, if an incarcerated defendant commits two offenses contemporaneously and those offenses are tried and sentenced together, it is illogical to claim that one of those contemporaneous sentences "started in the past . . . ." *Id.* The defendant has become liable to serve the sentences at the same time, one does not precede the other, and therefore the consecutive-sentencing statute is inapplicable.

As such, we conclude that the trial court erred by ordering defendant's sentences for his prisoner-in-possession and delivery convictions to run consecutively to each other. The offenses occurred at the same time, the charges were tried together, and the court imposed the sentences at one proceeding. While the trial court correctly concluded that the sentences for the current offenses must run consecutively to defendant's underlying domestic-violence sentence, the current sentences must run concurrently with each other. Accordingly, we vacate the judgment of sentence and remand to allow the circuit court to amend the order so that the current sentences run concurrently with each other.

### B. AMOUNT OF JAIL CREDIT

At sentencing, the court acknowledged that defendant's underlying domestic-violence sentence was terminated on June 15, 2010, shortly after the jury convicted defendant of prisoner in possession and delivery. The court further acknowledged that defendant had remained incarcerated pending sentencing on the current charges following the termination of his previous sentence. Accordingly, the court awarded defendant 27 days of jail credit, reflecting the period between the

termination of his original sentence and the sentencing on the current charges.[3] Because the court ordered defendant's sentences for prisoner in possession and delivery to run consecutively to each other, the court applied the jail credit only to the prisoner-in-possession sentence, i.e., the first sentence to be served. Defendant contends that the trial court was required to apply the jail credit to both sentences because the sentences should run concurrently. We agree.

Michigan's jail-credit statute, MCL 769.11b, provides:

Whenever any person is hereafter convicted of any crime within this state *and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted,* the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing. [Emphasis added.]

After defendant's original sentence was terminated on June 15, 2010, defendant remained in jail only "because of being denied or unable to furnish bond for the offense of which he is convicted . . . ." MCL 769.11b. Defendant remained in jail only because he was awaiting sentencing on the current charges. Accordingly, the jail-credit statute applies to this action. And, as we have determined that the court should have ordered defendant's prisoner-in-possession and delivery sentences to run concurrently with each other, the jail credit should have been applied to both sentences. We therefore

---

[3] This was proper under our Supreme Court's recent opinion in *People v Idziak,* 484 Mich 549, 567 n 17; 773 NW2d 616 (2009) (noting that a parolee who is returned to prison after a parole violation continues serving out his or her original sentence and is not entitled to jail credit pending trial on the parole violation; however, if the term of parole expires while the parolee is incarcerated awaiting trial on the violation, then he or she is entitled to jail credit after the parole expiration date).

vacate the award of jail credit in the judgment of sentence and remand to allow the circuit court to apply 27 days of jail credit to both the prisoner-in-possession and delivery sentences.

### C. PRIOR RECORD VARIABLE 7

Finally, defendant challenges the scoring of prior record variable (PRV) 7. Specifically, defendant contends that, because the court ordered his prisoner-in-possession and delivery *sentences to run consecutively*, the underlying *convictions cannot be considered "concurrent"* for purposes of the sentencing guidelines. And, thus, the court erred by assessing 10 points for PRV 7.

The scoring of PRV 7 is governed by MCL 777.57:

> (1) Prior record variable 7 is subsequent or concurrent felony convictions. Score prior record variable 7 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) The offender has 2 or more subsequent or concurrent convictions ............................................................. 20 points
>
> (b) *The offender has 1 subsequent or concurrent conviction* ......................................................................... 10 points
>
> (c) The offender has no subsequent or concurrent convictions ................................................................. 0 points
>
> (2) All of the following apply to scoring record variable 7:
>
> (a) Score the appropriate point value if the offender was convicted of multiple felony counts or was convicted of a felony after the sentencing offense was committed.
>
> (b) Do not score a felony firearm conviction in this variable.
>
> (c) Do not score a concurrent felony conviction if a mandatory consecutive sentence or a consecutive sentence

imposed under section 7401(3) of the public health code, 1978 PA 368, MCL 333.7401, will result from that conviction. [Emphasis added.]

Nothing in the statute suggests that the consecutive nature of a defendant's sentences affects whether the *convictions* were entered concurrently. However, we need not resolve that issue in this appeal. Because we conclude that the trial court erred and should have ordered defendant's prisoner-in-possession and delivery sentences to run concurrently, the court properly scored PRV 7 at 10 points under defendant's own analysis.

Affirmed in part, vacated in part, and remanded for correction of defendant's judgment of sentence. We do not retain jurisdiction.

GLEICHER, P.J., and HOEKSTRA and STEPHENS, JJ., concurred.