*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHARLA ROCHELLE WILBURN,

Defendant-Appellant.

UNPUBLISHED
April 18, 2019

No. 342260
Wayne Circuit Court
LC No. 15-006784-01-FH

Before: MARKEY, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right her bench trial convictions for felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to one day in jail, time served, for the felonious assault conviction and two years' imprisonment for the felony-firearm conviction. We affirm.

On July 27, 2015, a melee broke out at 8432 Pierson Street, Detroit, Michigan (the Dawson/Rodgers residence). Gabrielle Dawson (Gabrielle) lived at the Dawson/Rodgers residence with her physically disabled and ill mother Kimberly Dawson (Kimberly), her stepfather Michael Rodgers (Michael), her two younger brothers Myles Rodgers (Myles) and Kyle Rodgers (Kyle), her boyfriend Sterling Turner (Sterling), and Gabrielle's two young children. Tony Smith (Smith), a friend of the Dawson/Rodgers family, was visiting the Dawson/Rodgers residence that day.

On July 27, 2015, some medication was mistakenly delivered to the Dawson/Rodgers residence. When defendant's husband, Omar Wilburn (Omar) accused the Dawson/Rodgers family of stealing the medication and attempted to retrieve this package, the Dawson/Rodgers family hesitated to give it to him, instead wanting to return the medication to the pharmacy. Throughout this interaction, Wilburn was irate, verbally abusive and violent. Gabrielle testified that defendant participated in the interaction by standing near her husband in support, and at one point Michael saw defendant pull out her gun when Omar asked her if she "[had] his back[.]" When the pills were returned to Omar, he alleged that some were missing and he threw a tricycle and rocks at the Dawson/Rodgers residence. Omar's son Rasheed Moss (Rasheed) and

-1-

Rasheed's friends also threw items, such as rocks, at the Dawson/Rodgers residence, Michael, and Sterling. Other people from the neighborhood joined the fracas and the crowd swarmed the front of the home. At one point, Omar, Rasheed, and Rasheed's friends attempted to force their way into the Dawson/Rodgers residence and Gabrielle sprayed them with mace[1] in an attempt to keep them out. Omar then walked away from the home, returned with a barstool, and broke the windshield of Gabrielle's vehicle, which was parked on the street outside the Dawson/Rodgers residence. When Gabrielle started to run towards her vehicle, defendant pointed a gun at Gabrielle's face and told her "b***h, don't do it, I will shoot you." Gabrielle testified at trial that at that point, she no longer had her mace with her. As Michael pulled Gabrielle away from defendant, putting his body between the two women, defendant continued to approach Gabrielle, getting closer and closer to her. Gabrielle, Michael, and Sterling then retreated into the Dawson/Rodgers residence and the confrontation ended.

On appeal, defendant argues that there was insufficient evidence to convict her of felonious assault and felony-firearm. The thrust of defendant's argument is that she should not have been convicted of these offenses because she acted in self-defense and in defense of Omar when she pointed her gun at Gabrielle.[2] We disagree.

Challenges to the sufficiency of the evidence are reviewed de novo to determine if a rational trier of fact could conclude that the prosecution proved the essential elements of the crime beyond a reasonable doubt. *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012). All conflicts in the evidence are resolved in favor of the prosecution. *Id*. "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). On appeal, "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Felonious assault has three elements: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *Id*. If a defendant asserts the affirmative defense of self-defense, "the prosecutor bears the burden of disproving it beyond a reasonable doubt." *People v Roper*,

---

[1] Contrary to defendant's assertion in her brief on appeal, Gabrielle's use of mace was not limited to protecting her family's home, but also to prevent intruders from gaining access to the home which held her physically disabled and ailing mother and her two young children.

[2] To the extent that defendant briefly challenges the trial court's admission of photographs of Gabrielle's vehicle at trial, defendant did not identify this as an issue in her statement of the questions presented and it is therefore waived. *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011). Additionally, defendant has not cited legal authority or provided factual support for her argument, resulting in the abandonment of this issue. *King v Oakland Co Prosecutor*, 303 Mich App 222, 236; 842 NW2d 403 (2013).

286 Mich App 77, 86; 777 NW2d 483 (2009) (citation and quotation marks omitted); *People v Denson*, 500 Mich 385, 399; 902 NW2d 306 (2017). As pertinent to this appeal, MCL 780.972(2) provides that:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he *or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual*.[3] [Emphasis added.]

"In general, a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013); *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). When acting in defense of another, "the third party steps into the shoes of the individual threatened." *People v Heflin*, 434 Mich 482, 511-512 n 26; 456 NW2d 10 (1990) (opinion of RILEY, C.J.).

The argument outside the Dawson/Rodgers residence on July 27, 2015, quickly escalated from a dispute about a mistaken delivery of prescription medication to a dangerous physical conflict involving violence. Even before the argument turned violent, however, Michael saw defendant take her gun out and point it at Michael and other members of his family. Sterling elaborated that when the crowd began to throw rocks and other items at the Dawson/Rodgers home, defendant had her gun drawn and was irate, calling out to the Dawson/Rodgers family, "I will kill you, I will kill y'all[.]"[4] When Michael spoke to Omar to deescalate the situation, Omar threatened to vandalize the Dawson/Rodgers home. When the argument turned physically violent, Omar was the initial aggressor, as he had been since he confronted the Dawson/Rogers family about the erroneously delivered medication, and because he threw a tricycle at the storm door of the Dawson/Rodgers residence, shattering the door. Rasheed and his friends then also began throwing items, such as rocks, at Michael, Sterling, Gabrielle and the Dawson/Rodgers residence.

Sterling testified that he did have a knife in his hand while he was on the porch, but he did not swing the knife at anyone. Notably, Sterling went inside to get the knife after he saw defendant with her gun drawn and after the physical violence from the crowd began. At the same time, Myles arrived at the scene and took out a small knife. While the record reflects that Myles did swing this knife at Omar, Rasheed, and Rasheed's friends during the chaos, Myles did not strike anyone with the knife. According to the testimony at trial, defendant had already

---

[3] The Self-Defense Act (SDA), MCL 780.971 *et seq.*, "does not diminish an individual's right to use deadly force or force other than deadly force in self-defense or defense of another individual as provided by the common law of this state in existence on October 1, 2006." MCL 780.974.

[4] This was even before Gabrielle approached her own vehicle after Omar smashed the windshield. Sterling later stated during cross-examination that defendant pulled out her gun after Gabrielle approached her vehicle when Omar smashed the windshield.

brandished her gun before Myles arrived home and the gun was visible to him when he arrived. Myles also kept at least a three foot distance from defendant. As the situation escalated, Omar, Rasheed, and Rasheed's friends attempted to force their way into the Dawson/Rodgers residence. They were physically stopped from doing so by Smith before Gabrielle sprayed them with her mace. After walking away from the home, Omar then took a barstool and broke the windshield of Gabrielle's vehicle. Gabrielle then ran towards her vehicle and was stopped by defendant, who pointed her gun at Gabrielle and repeatedly threatened to shoot her.

Defendant argues that her action of pulling her gun out and pointing it at Gabrielle was justified because she was defending Omar from being sprayed with mace by Gabrielle when Gabrielle ran towards her vehicle. The record reflects however, that Omar had broken the windshield of Gabrielle's vehicle and was clearly the aggressor in the situation. Contrary to defendant's assertion in her brief on appeal, a review of the record does not support the conclusion that Omar had "abandoned" his aggression at the time defendant pointed her gun at Gabrielle and threatened her life. Under such circumstances, defendant cannot claim defense of another for Omar because Omar himself would be unable to claim self-defense. See *Heflin*, 434 Mich at 511-512 n 26; *Guajardo*, 300 Mich App at 35. Even if defendant did not stand in Omar's shoes when she pulled the gun out, the trial court properly concluded that defendant did not have an honest and reasonable belief that she or Omar faced an imminent unlawful use of force by Gabrielle, Sterling or Myles. In particular, the trial court noted that no one in the Dawson/Rodgers family had instigated any conflict with defendant or Omar, but instead "they were acting in defense of themselves, their property and other family members." Specifically, the trial court observed that Gabrielle, Sterling and Myles secured mace and knives because "they were reacting to the . . . unlawful activities of Omar Wilburn and the others" that participated in the melee outside their home. In the words of the trial court, Sterling and Myles "honestly and reasonably believed that the production of the knives and the use of the knives as they did was necessary to defend themselves and their family from the imminent unlawful use of force" by Omar, Rasheed and the others that joined in their attack on the Dawson/Rodgers home and its inhabitants. The trial court also ruled that Gabrielle's use of mace was lawful to protect her home and family from the intruders. See MCL 750.224d(5)(b).[5]

We acknowledge that defendant's version of events was decidedly different, as she blamed Sterling and Gabrielle for escalating the dispute and she informed Corporal Robert Nill of the Detroit Police Department that she felt securing her gun from her home and brandishing it was necessary to protect herself and her family. Defendant also admitted to Corporal Nill that she pointed her gun at Michael and his family. According to defendant, she drew her gun after she observed Myles and Sterling with knives, and she further stated that she pointed the gun at Gabrielle as Gabrielle approached Omar with mace in her hand. Even accepting defendant's version of events, this conflict in the evidence was for the trial court as factfinder to weigh and evaluate. *Kanaan*, 278 Mich App at 619. Additionally, we note that the record also shows that defendant used excessive force when she pointed her gun at Gabrielle, threatened to shoot her

---

[5] MCL 750.224d(5)(b) allows for the use of mace "in the protection of a person or property under circumstances that would justify the person's use of physical force[.]"

repeatedly and continued to approach her even as Michael attempted to protect Gabrielle from defendant and diffuse the situation as the family retreated towards the Dawson/Rodgers residence. *Guajardo*, 300 Mich App at 35. Accordingly, under these circumstances, we agree with the trial court that the prosecution proved beyond a reasonable doubt that defendant did not act in justifiable self-defense or defense of another when she continually pointed her gun at Gabrielle and threatened to shoot her. Defendant's convictions of felonious assault and felony-firearm were well supported by the record evidence.[6]

Affirmed.

/s/ Jane E. Markey
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola

---

[6] Contrary to defendant's allegation in her brief on appeal, the trial court did not impute guilt to her because of her "mere presence" at the Dawson/Rodgers home as Omar behaved in an irate and violent fashion. Instead, the trial court's detailed and thorough ruling from the bench confirms that it independently considered and determined defendant's culpability for the charged crimes.