*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JONQUAL ERNEST SHAW,

       Defendant-Appellant.

UNPUBLISHED
August 1, 2024

No. 363999
Kent Circuit Court
LC No. 21-003020-FC

Before: CAMERON, P.J., and M. J. KELLY and YATES, JJ.

PER CURIAM.

Defendant, Jonqual Ernest Shaw, appeals as of right his jury-trial convictions of first-degree felony murder, MCL 750.316(1)(b), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to life without parole for the felony murder conviction, and two years' imprisonment for the felony-firearm conviction. The trial court imposed $5,000 in restitution in addition to other fines and costs. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from the January 6, 2021 shooting death of the victim, Markel Tyrel Williams, at the Clarion Inn and Suites (the Clarion) in Grand Rapids. Defendant and Devanta Glasper ambushed Williams while wearing ski masks in the parking lot of the Clarion. Williams was shot two times in the back and he eventually died from his injuries. Glasper was shot in the leg, but he survived. At the time of the attack, Williams was wearing a backpack containing two laptops. The backpack was missing after the shooting.

Defendant was soon arrested for the shooting. Glasper fled to Arizona and was extradited back to Michigan several months later. In the months before Glasper's extradition, police received a letter purportedly written by Glasper in which he confessed to shooting Williams (the "Glasper confession"). It was revealed at trial that defendant's fingerprints, but not Glasper's, were on the Glasper confession, suggesting defendant was behind the Glasper confession. After Glasper returned to Michigan, defendant wrote a letter to Glasper apologizing for having implicated him (the "jailhouse letter"). Defendant was convicted and sentenced as noted. This appeal followed.

-1-

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues there was insufficient evidence to convict him of (1) felony murder, and (2) felony-firearm. We disagree.

## A. STANDARD OF REVIEW

"When reviewing a defendant's challenge to the sufficiency of the evidence, we review the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (quotation marks and citation omitted.) "A prosecutor need not present direct evidence of a defendant's guilt." *Id*. "Rather, [c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks and citation omitted, alteration in *Williams*).

## B. LAW AND ANALYSIS

## 1. FELONY MURDER—INTENT

To be convicted of felony murder, the prosecution must prove:

(1) the killing of a person, (2) with the intent to kill, do great bodily harm, or create a high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of an enumerated felony. [*People v Lane*, 308 Mich App 38, 57-58; 862 NW2d 446 (2014).]

Defendant's first argument on appeal is that he lacked the necessary intent to commit the crime. This argument lacks merit.[1]

"Because intent may be difficult to prove, only minimal circumstantial evidence is necessary to show a defendant entertained the requisite intent." *People v Harverson*, 291 Mich

---

[1] Contrary his arguments below, defendant apparently concedes on appeal he was one of the two men present when Williams was killed, but claims it was Glasper, not defendant, who shot and killed Williams. In making this argument, defendant fails to address whether he could have been convicted under an aiding and abetting theory. "A defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet." *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006). The prosecutor argued below that the jury could convict on the basis of aiding and abetting, and the trial court gave the jury an aiding-and-abetting instruction: "Anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits it and can be convicted as an aider and abettor." Despite his apparent belief that Glasper committed the murder, defendant makes no argument explaining to this Court why it should not affirm his convictions on the basis of aiding and abetting.

App 171, 178; 804 NW2d 757 (2010). As such, the "[i]ntent to kill may be inferred from all the facts in evidence, including use of a deadly weapon, taking aim at a victim, injury to the victim, evidence of flight and attempts to hide evidence." *People v Everett*, 318 Mich App 511, 531 n 10; 899 NW2d 94 (2017) (quotation marks and citation omitted).

There is ample evidence in support of defendant's intent to kill or cause great bodily harm. For instance, Williams's girlfriend testified that the "taller" attacker wore a gun on his waistband, which he pointed at her when she tried to help Williams. Of Glasper and defendant, defendant was the taller individual. Another eyewitness testified both men were attacking Williams. There were multiple witnesses who reported seeing defendant and Glasper leaving the Clarion soon after the shooting. Defendant's jailhouse letter and the Glasper confession provided the jury with evidence that defendant had manufactured false evidence to deflect blame from himself. A police officer found burned clothing and other items in the dumpster at the Clarion, suggesting the culprit had tried to get rid of evidence. Adding to this considerable evidence, the jury viewed the surveillance footage of defendant and Glasper following Williams through the hotel in the minutes before he was killed—actions one detective opined were "suspicious." But, perhaps the most telling evidence was defendant's admission to another inmate he shot Williams.

On appeal, defendant shifts gears by arguing he lacked intent because he and Glasper did not "immediately" attack Williams. But, the fact that defendant and Glasper watched Williams for some time before the attack also indicated that they were "casing" Williams before the crime. Defendant also appears to believe his lack of the requisite intent is shown by the fact that he did not immediately fire his weapon at Williams. This argument is contradicted by testimony from Williams's girlfriend that the "taller" of the men attacked Williams from behind and placed him in a chokehold.[2]

Defendant further attempts to muddy the issue of intent by suggesting that the only person he shot was Glasper, which was a mistake, and that he shot the gun to protect Glasper from Williams's attack. While there was evidence presented below indicating Williams shot a gun from the pocket of his winter coat (which could suggest Williams was shot in response to a threat), all the other evidence indicated defendant and Glasper initiated the attack. Evidence of defendant's initial attack on Williams is sufficient to show his intent to kill or cause great bodily harm, and the fact that Williams may have also shot a firearm does not overcome this conclusion.

### 2. FELONY MURDER—PREDICATE FELONY

Defendant next argues that the prosecution failed to prove that he committed armed robbery. Armed robbery is an enumerated predicate felony of first-degree felony murder. MCL 750.316(1)(b); *People v Akins*, 259 Mich App 545, 547; 675 NW2d 863 (2003). Armed robbery requires the prosecution to show:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against

---

[2] A police officer testified defendant was 6 feet, 2 inches tall, while Glasper was 5 feet, 11 inches tall.

any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018) (citation omitted).]

Defendant argues that his intent was to "target" Williams, not to commit a larceny. We need not spend too much time on this argument. Generally, intent "may be inferred from the facts and circumstances of a case." *People v Hardy*, 494 Mich 430, 441 n 26; 835 NW2d 340 (2013) (quotation marks and citation omitted). The unchallenged evidence here demonstrates defendant and Glasper attacked Williams at gunpoint and took his backpack, which contained two laptop computers. Thus, it was reasonable for the jury to conclude defendant intended to commit armed robbery.

### 3. FELONY-FIREARM

Defendant next challenges the sufficiency of the evidence for his felony-firearm conviction. "The elements of felony-firearm are that the defendant possessed a firearm during the commission or attempt to commit a felony." *People v Davis*, 216 Mich App 47, 53; 549 NW2d 1 (1996).[3] Defendant's argument appears premised on the earlier argument that there was insufficient evidence to convict defendant of felony murder (and, by extension, armed robbery). As discussed, there was sufficient evidence to support the jury's verdict, and, therefore, the present argument challenging the sufficiency of the evidence for felony-firearm should also fail. To the extent defendant believes there was insufficient evidence that he possessed a firearm, defendant admits on appeal he possessed a firearm because he says he shot Glasper. This fact was also drawn out at trial with testimony that defendant possessed a firearm at the time of the attack.

### III. RESTITUTION

Defendant argues the trial court erred when it imposed restitution without making any on-the-record findings as to the amount of restitution imposed. We disagree.

### A. STANDARD OF REVIEW

"This Court reviews for an abuse of discretion the trial court's calculation of a restitution amount, while reviewing the trial court's factual findings for clear error." *People v Bentley*, ___ Mich App ___, ___ NW3d ___ (2024) (Docket No. 364303); slip op at 3. "An abuse of discretion

---

[3] Defendant's argument as to this issue is confined to a single sentence: "Because the prosecution failed to prove beyond a reasonable doubt that [defendant] intended to commit any felony against Mr. Williams or anyone else, the felony firearm conviction fails." Given the brevity of this argument, we could also consider this argument abandoned. See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004) ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue.").

occurs when a trial court chooses an outcome outside of the range of principled outcomes or when it makes an error of law." *Id*. (citation omitted).

This issue also involves questions of statutory interpretation, which we review de novo. *People v Fawaz*, 299 Mich App 55, 64; 829 NW2d 259 (2012).

> Statutory interpretation begins with the text of the statutes, and effect must be given to every clause and sentence. The Court must avoid an interpretation that would render any part of the statute surplusage or nugatory. When the Legislature has unambiguously conveyed its intent in a statute, judicial construction is not permitted. If a statute is unambiguous, a court should not apply preferential or "dice-loading" rules of statutory interpretation. A statute is ambiguous if two provisions irreconcilably conflict or if the text is equally susceptible to more than one meaning. If two provisions can instead be construed to avoid conflict, that construction should control. [*People v Hall*, 499 Mich 446, 453-454; 884 NW2d 561 (2016) (quotation marks and citations omitted).]

## B. LAW AND ANALYSIS

"Crime victims have a constitutional and a statutory right to restitution." *Bentley*, ___ Mich App at ____; slip op at 4, citing Const 1963, art 1, § 24; MCL 780.766; *People v Turn*, 317 Mich App 475, 479; 896 NW2d 805 (2016); *People v Cross*, 281 Mich App 737, 739; 760 NW2d 314 (2008). MCL 769.1a(2), the general restitution statute, states:

> (2) Except as provided in subsection (8), when sentencing a defendant convicted of a felony, misdemeanor, or ordinance violation, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate.

Similarly, the Crime Victim's Rights Act (CVRA), MCL 780.751, *et seq.* provides:

> (2) Except as provided in subsection (8), when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate. For an offense that is resolved by assignment of the defendant to youthful trainee status, by a delayed sentence or deferred judgment of guilt, or in another way that is not an acquittal or unconditional dismissal, the court shall order the restitution required under this section.

> \* \* \*

> (8) The court shall order restitution to the crime victim services commission or to any individuals, partnerships, corporations, associations, governmental entities, or other legal entities that have compensated the victim or the victim's

estate for a loss incurred by the victim to the extent of the compensation paid for that loss. The court shall also order restitution for the costs of services provided to persons or entities that have provided services to the victim as a result of the crime. Services that are subject to restitution under this subsection include, but are not limited to, shelter, food, clothing, and transportation. However, an order of restitution shall require that all restitution to a victim or victim's estate under the order be made before any restitution to any other person or entity under that order is made. The court shall not order restitution to be paid to a victim or victim's estate if the victim or victim's estate has received or is to receive compensation for that loss, and the court shall state on the record with specificity the reasons for its action. [MCL 780.766(2), (8).]

Before trial, on October 15, 2021, the Michigan Department of Health and Human Services (DHHS), Division of Victim Services, sent the trial court a letter indicating Williams's estate had applied for financial assistance related to Williams's death and the Crime Victim Service Commission "issued an award in the amount of $5,000 on behalf of the victim." Both MCL 769.1a(2) and MCL 780.766(2) direct that a court "*shall* order . . . that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate." (Emphasis added.) The word " 'shall' indicates a mandatory directive." *People v Lockridge*, 498 Mich 358, 387; 870 NW2d 502 (2015) (emphasis omitted). Thus, the trial court had no discretion, and it was required to order restitution in this instance.

Defendant argues on appeal the trial court erred because it failed to make any on-the-record findings as to the amount of restitution imposed. This argument is premised on the wording of MCL 780.767(4) that "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the prosecuting attorney." Under the plain language of this statute, the prosecutor's burden of proof is only operative where there is a "dispute" of restitution. Defendant did not dispute the amount of restitution in the proceedings below. Therefore, the prosecutor's burden of proof was not implicated and the trial court did not err in imposing $5,000 in restitution.

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Christopher P. Yates

-6-