*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

FUTURA KRISHONNA WADE,

Defendant-Appellant.

UNPUBLISHED
October 1, 2019

No. 342455
Wayne Circuit Court
LC No. 14-010048-01-FC

Before: JANSEN, P.J., and CAMERON and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial conviction of voluntary manslaughter, MCL 750.321. Defendant was sentenced to 90 months' to 15 years' imprisonment. For the reasons provided below, we affirm.

## I. BASIC FACTS

This case arises from defendant's fatal stabbing of her boyfriend, Kenneth Towns. Defendant lived in Towns's house on Holmur Street in Detroit. Defendant's three children, Tyra Simpson, Juan Clements (Juan), and Davon Clements, lived across the street.

At around 4:00 a.m. or 5:00 a.m. on May 22, 2014, Simpson, defendant's daughter, was awakened by a "loud commotion." Defendant, Towns, and Juan were arguing in front of defendant's home. Defendant and Towns were intoxicated. Simpson came outside and saw Towns swinging a metal toy stroller at her brother Juan, who is cognitively impaired. Simpson, who was pregnant, tried to grab the stroller out of Towns's hands. Towns then pushed Simpson, causing her to fall to the ground. Juan ran, and Towns attempted to chase after him. At some point, defendant gave Simpson her car keys because she wanted Simpson to move the car, as she did not want Towns to damage it. Towns eventually gave up pursuing Juan, turned around, and

-1-

said, "[Y]our bitch ass son's gonna run, now I'm going to go after your daughter." According to Simpson, Towns then grabbed a piece of cement from a neighbor's yard and came toward Simpson.[1] At this point, Simpson got into defendant's car to move it. Although defendant was near the car with Simpson and "possibly" could have gotten into the vehicle as well, defendant did not get into the vehicle. In the process of moving the car, Simpson drove past Towns, the eventual victim, leaving defendant with Towns (who according to Simpson, had a piece of cement in his hands). After Simpson parked the car further down the street, she walked back to where defendant and Towns were. Upon Simpson's return, defendant told Simpson to call the police.

Simpson testified that after her return, she saw Towns chasing defendant along Holmur Street. Towns eventually stopped chasing defendant and said, "[C]all the police[.] I'm about to kill this bitch," and he walked into his house. Simpson then went into her home and gave defendant her car keys and purse; defendant left the scene. Simpson never called the police. About 20 minutes after defendant left, Simpson tried "a bunch of times" to call defendant but she never answered the phone. Simpson also never received any phone calls from defendant.

At about 8:00 a.m. or 9:00 a.m., Simpson woke up and went to Towns's home to get a ride to an appointment from defendant. Simpson did not see defendant's car. Simpson knocked on the door, and it opened. Simpson stepped inside, saw Towns lying dead on the floor between the living room and the doorway, and immediately called 911.

Simpson searched "everywhere" for defendant and eventually found her at the home of one of defendant's friends. Simpson told defendant that the police were on Holmur Street and gave her a detective's card. Simpson testified that defendant called the number twice, but "the lady that [defendant] talked to didn't know what she was talking about." According to Simpson, defendant then told her that while Simpson moved the car the night before, "[Towns] came at her . . . with the same object [piece of concrete] and she jabbed him" with a pocket knife.

## II. INSTRUCTIONAL ERROR—FLIGHT INSTRUCTION

Defendant argues that there was no evidence to support the trial court's flight instruction and her right to a fair trial was thereby denied. We disagree. Defendant preserved this issue by objecting to the instruction before the jury went into deliberation. See MCR 2.512(C); *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003).

"Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). The

---

[1] Simpson's testimony is not clear whether defendant asked her to move the car once or twice. At certain times, Simpson testified that defendant only asked her to move the car once—occurring before Towns stopped chasing Juan and threatened Simpson. But elsewhere, when Simpson was asked what defendant was doing *while Towns was approaching Simpson*, she stated that defendant asked her to move the car.

trial court abuses its discretion when it chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

As recognized by this Court:

It is well established in Michigan law that evidence of flight is admissible. Such evidence is probative because it may indicate consciousness of guilt, although evidence of flight by itself is insufficient to sustain a conviction. The term "flight" has been applied to such actions as fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody. [*People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995) (citations omitted).]

"[J]ury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003). Thus, "[t]he trial court may issue an instruction to the jury if a rational view of the evidence supports the instruction." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014). In this case, the trial court justified the giving of the flight instruction as follows:

Okay. I do find that there is based on the evidence enough to justify this instruction, considering the defendant leaves right after this alleged incident occurs. The daughter tries calling the defendant it appears multiple times and it isn't until the daughter tracks her down. The question I have is there are options that the defendant tried to run away, tried to hide, or ran away, and I'm going to indicate that she ran away and hid, because she simply wasn't there . . . .

At the end of trial, the trial court instructed the jury on flight according to the model jury instruction, M Crim J 14.4:

There has been some evidence that the defendant ran away after the alleged crime. This evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true, and, if true, whether it shows that the defendant had a guilty state of mind.

The trial court did not abuse its discretion in deciding that the evidence supported giving the flight instruction. Defendant's actions of leaving the scene of the crime (her home), not calling for medical aid, not answering her daughter's phone calls, and not returning those missed calls could be considered evidence of flight because they supported an inference that defendant was attempting to avoid detection.

Defendant contends that "the flight instruction has a particularly prejudicial effect in a case like this one, where [defendant] claimed self-defense and evidence was introduced which explained that her departure from the scene of the alleged crime was caused by something other

-3-

than a consciousness of guilt—fear." However, the reasons for defendant's flight are purely factual questions, which the jury instruction properly defined—the instruction provides that although defendant's fleeing the scene *could* indicate consciousness of guilt, defendant also *could have fled for an innocent reason*, such as panic, mistake, or fear.

Therefore, because there was evidence to support the flight instruction, the trial court did not err when it gave the instruction.

### III. SUFFICIENCY OF THE EVIDENCE—SELF-DEFENSE

Defendant argues that there was insufficient evidence to convict her of voluntary manslaughter because the prosecutor failed to disprove her claim of self-defense. Defendant asserts that "[t]he evidence showed that [defendant] had an honest and reasonable fear that Mr. Towns presented a real and immediate threat of death or great bodily harm" and that "[defendant] reacted with deadly force to protect herself." We disagree.

"A defendant need not take any action to preserve a challenge to the sufficiency of the evidence." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). "When reviewing a defendant's challenge to the sufficiency of the evidence, we review 'the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt.' " *Id.*, quoting *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). "A prosecutor need not present direct evidence of a defendant's guilt. Rather, circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Williams*, 294 Mich App at 471 (quotation marks and citation omitted). Further, we resolve any conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

"Once evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt." *People v Fortson*, 202 Mich App 13, 20; 507 NW2d 763 (1993). Under the common law, self-defense is justifiable when the defendant "honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013) (quotation marks and citation omitted). "In 2006, the Legislature enacted the Self-Defense Act (SDA), MCL 780.971 *et seq.*," which "codified the circumstances in which a person may use deadly force in self-defense." *Guajardo*, 300 Mich App at 35. "[T]he SDA continues to require that a person have an honest and reasonable belief that there is a danger of death, great bodily harm, or a sexual assault in order to justify the use of deadly force." *Id.* at 35-36; see also MCL 780.972(1)(a).

The only "evidence" to support defendant's theory of self-defense was the testimony of Simpson, in which she described defendant telling her several hours after the killing that defendant had stabbed Towns with a knife in response to Towns "coming at her" with a piece of cement. Although it is clear that Simpson's testimony recounting what defendant told her was

-4-

hearsay and therefore inadmissible as substantive evidence of what actually happened,[2] even accepting Simpson's testimony as substantive evidence, there was sufficient evidence to prove beyond a reasonable doubt that defendant had not acted with self-defense, i.e. that what she told Simpson was not true.

According to defendant, conveyed through Simpson's testimony, defendant stabbed Towns, who had "come at" her with the piece of concrete, while Simpson was away moving defendant's car. This evidence is contradicted by other portions of Simpson's testimony. First, the evidence is undisputed that Towns was found dead inside his house—not outside, where he was seen with the concrete.[3] Indeed, Simpson also testified that she saw Towns return to the house after which she and defendant met to hand back the keys to the car. While Simpson testified that after she returned from moving the car, she saw Towns chasing defendant (without specifying if he still had the concrete), she explained that at some point Towns had given up and returned to his house. However, there was no evidence that he took the piece of concrete with him inside the house. Indeed, and perhaps most importantly, in the photographs of the crime scene, which were admitted at trial, there is no sign of any concrete pieces lying near Towns's body. Thus, the physical evidence did not support defendant's claim that she acted in self-defense in response to Towns having attacked her with a piece of concrete.

Therefore, there was sufficient evidence to allow the jury to find beyond a reasonable doubt that defendant had not acted in self-defense when she fatally stabbed Towns.

## IV. PROSECUTORIAL MISCONDUCT—BURDEN OF PROOF

Defendant next argues that she was denied a fair trial because the prosecutor made several comments that shifted the burden of proof to defendant to prove that she acted in self-defense, thereby violating her constitutional right to not testify. We disagree.

---

[2] While arguing that there was no evidence to support the instruction of self-defense, the prosecutor mentioned that the statement was "arguably not even admissible in that it's hearsay." The trial court disagreed and noted that the prosecution, itself, was "relying on that statement . . . to . . . connect this defendant to the crime." But the trial court failed to appreciate that the prosecution was not offering the statement to prove the truth of the *entirety* of the matter asserted, i.e., that defendant actually stabbed Towns in response to Towns attacking or threatening her with a piece of concrete. Instead, it was offered to show that she admitted to stabbing Towns—the prosecution clearly did not solicit defendant's statement to prove that she had acted with self-defense. Thus, the portion of the statement giving defendant's purported reason for stabbing Towns was hearsay and not *substantively* admissible. However, it was admissible for any other *non-substantive* purpose, such as showing that defendant was lying due to consciousness of guilt.

[3] Of note, the medical examiner testified that Towns's heart probably only beat for a few moments after the stabbing, which meant that a jury could infer that Towns did not move very far, if at all, after being stabbed. Thus, the jury could have inferred that Towns was stabbed inside the house.

A prosecutorial misconduct claim is preserved if the alleged improper comments are challenged at trial. *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). While defense counsel objected to the prosecution's first comment, there were no objections to the other comments. Thus, the challenge to the first comment is preserved, but the challenges to the other comments are not preserved. Preserved claims are reviewed to determine whether the challenged conduct denied defendant a fair and impartial trial. *Id*. Unpreserved claims of prosecutorial error are reviewed for plain error affecting defendant's substantial rights. *Id*. at 124-125. Thus, in this plain-error context, reversal only is warranted if a curative instruction would not have alleviated any prejudicial effect. *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003).

The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *Aldrich*, 246 Mich App at 110. As recognized by this Court:

> A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof. Also, a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof. However, a prosecutor's argument that inculpatory evidence is undisputed does not constitute improper comment. A prosecutor may also argue that the evidence was uncontradicted even if the defendant is the only person who could have contradicted the evidence. [*People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010).]

First, for defendant's preserved issue, defendant challenges the following comment in the prosecution's closing argument:

> Now, you can consider all of the evidence when you're deciding if that's a reasonable belief. So, first of all I need to point out there's no real evidence of her state of mind. She told her daughter he's coming at me with an object, a rock, whatever, that's it. We don't know what she's thinking. We have to infer it and the rest of the evidence in the case. So how are you going to do that?

However, after defense counsel objected to the comment, the trial court instructed the jury to disregard the comment. Thus, defendant cannot show how this comment prejudiced her. See *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003) ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors.").

Next, for defendant's unpreserved arguments, she challenges the following comments in the prosecutor's rebuttal argument:

> Well, some other things [defense counsel] said that I do agree with, people come in here and testify and what—you know what testimony is, it's under oath. All those witnesses stopped right here and the Court Clerk swore them in and they promised to tell the truth. This statement [defendant's statement made to Simpson] is not under oath, okay. It's not as reliable as the other testimony. Because she can say whatever she wants. She has hours to think about what she's

-6-

going to tell her daughter. Play in this defense, call her 15 times that you can see in the call logs.

[T]he evidence is subject to the test of cross examination. Well, no that statement is not subject to the test of cross examination. [Defense counsel is] telling you why you should believe evidence from the stand. This most important piece of evidence for him, the only evidence of self-defense, no, that's not subject to any of his tests that he's laying out for you. The credibility, the reasonableness and I have quote marks on my notes here. It's not credible, it's not reasonable, it's her trying to get away with murder.

He says no witnesses testified about the moment. That's absolutely true. You have to infer what happened, but you know—you know, she said she stabbed him, no witnesses testified about the moment that if it actually happened. You have to infer that. I agree with [defense counsel] there.[4]

Defendant also challenges the following argument by the prosecutor:

So, I think it is true, it comes down to this statement. I stabbed him. And I do want you to believe that it matches up with all the rest of the evidence, there's no evidence anything else happened. I don't think it's even disputed at this point, she stabbed him because he's coming at me with an object.

Is there any evidence that supports that statement which once again not under oath, not subject to cross examination. Is there any piece of evidence that suggests that?

The comments in question were proper because they concerned an inference that could be properly drawn from the testimony. The prosecutor's comments did not mention defendant's failure to testify but instead attempted to highlight a possible shortcoming[5] with defendant's statement to Simpson regarding acting in self-defense—it was not under oath or subject to cross-examination and therefore should be viewed cautiously. See *People v Chelmicki*, 497 Mich 960, 961 (2015) ("Hearsay is considered unreliable evidence because it is not subject to traditional

---

[4] The prosecution's statement appears to be in response to the following argument made by defense counsel:

[Simpson] told the police what [defendant] said. It is what she said that makes the connection between the decedent and [defendant]. But for that, there's no case against [defendant]. 'Cause it's like who did it? Who would have known? Was it her brother, was it Ms. Simpson, was it [defendant], was it a stranger? Who did it? So she tells the police, this is what [defendant] told me.

[5] See our discussion in note 2 of this opinion explaining why the entirety of defendant's statement to Simpson should not have been substantively admissible.

testimonial safeguards and poses . . . risks . . . .") (VIVIANO, J., concurring in part and dissenting in part). The prosecutor's statements were in response to defense counsel's argument. "[A]lthough a defendant has no burden to produce any evidence, once the defendant advances evidence or a theory, argument with regard to the inferences created does not shift the burden of proof." *People v Godbold*, 230 Mich App 508, 521; 585 NW2d 13 (1998). Attacking the credibility of defendant's statement did not shift the burden of proof. See *Fyda*, 288 Mich App at 464.

Accordingly, we hold that defendant has failed to establish any ground to reverse based on the claims of prosecutorial misconduct.

## V. OFFENSE VARIABLE (OV) 3—PHYSICAL INJURY

Defendant next argues that she should have been assessed zero points for OV 3, instead of the scored 25 points. We disagree.

"[OV] 3 is physical injury to a victim." MCL 777.33(1). OV 3 is assessed 25 points if "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). Zero points are assessed if "[n]o physical injury occurred to a victim." MCL 777.33(1)(f). Defendant concedes that our Supreme Court's decision in *People v Houston*, 473 Mich 399; 702 NW2d 530 (2005), is controlling and requires a score of 25 points in the instant case.[6] Thus, as defendant recognizes, we are bound to follow *Houston*, and we affirm the score of 25 points.

Affirmed.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Jonathan Tukel

---

[6] Defendant states that she is raising the issue to preserve it for possible review at the Supreme Court.