*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERRANCE TERRELL MCCLINTON,

        Defendant-Appellant.

UNPUBLISHED
November 30, 2023

No. 359010
Calhoun Circuit Court
LC No. 2019-002298-FC

Before: HOOD, P.J., and JANSEN and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (defendant engages in sexual penetration, causes personal injury to the victim, and uses force or coercion); and assault with intent to commit criminal sexual conduct (CSC) involving sexual penetration, MCL 750.520g(1). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 420 to 600 months' imprisonment for his CSC-I conviction and to serve 60 to 120 months' consecutive imprisonment for his conviction of the assault with intent to commit CSC involving sexual penetration. We affirm.

This case arises out of an incident that occurred in Battle Creek, Michigan, during the early morning hours of June 29, 2019. The victim testified that, as she walked down a path near Taft Street, someone grabbed her from behind, dragged her into a wooded area, and sexually assaulted her. The victim screamed, and officers arrived at the scene during the assault. Officers were able to apprehend defendant fleeing the area, and the victim identified defendant as the person who assaulted her.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution presented insufficient evidence for a rational jury to find defendant guilty of assault with intent to commit CSC involving sexual penetration of the victim's vagina. We disagree.

We review a claim that evidence was legally insufficient by reviewing the evidence in a light most favorable to the prosecution to ascertain whether a trier of fact could find that the elements of the crime were proven beyond a reasonable doubt. *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011); see *Jackson v Virginia*, 443 US 307, 324; 99 S Ct 2781; 61 L Ed 2d 560 (1979).

To establish the crime of assault with intent to commit CSC involving sexual penetration pursuant to MCL 750.520g(1), the prosecution must prove "(1) an assault, meaning an attempt to commit a battery or an unlawful act that places another person in reasonable apprehension of an imminent battery, and (2) an intent to commit CSC involving sexual penetration." *People v Hoskins*, 342 Mich App 194, 204; 993 NW2d 48 (2022). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993).

At trial, the victim testified that defendant grabbed her by the neck and hair, threw her to the ground, and pulled off her shorts. She further testified that, as she faced defendant while she was pinned to the ground, she vigorously punched, kicked, and otherwise fought to prevent defendant from sexually penetrating her. Throughout this part of the incident, the victim was screaming for defendant to stop raping her. The victim also testified that she fought hard enough to prevent defendant from penetrating her until she was turned onto her side and defendant inserted his penis into her anus. The nurse who conducted the victim's sexual assault examination testified that the victim had "multiple abrasions, lacerations and injuries to her anus and her vaginal area." The nurse agreed that the injuries to the victim's vagina and anus were bleeding or seeping and that "[t]hey were all fresh injuries." The victim also testified that she had no physical injuries before the assault.

We hold that this evidence was sufficient to establish the elements of assault with intent to commit CSC through vaginal penetration. Viewing the evidence in a light most favorable to the prosecution, the evidence shows that defendant was on top of the victim when he tried to sexually penetrate her vagina, but the victim was able to stop defendant from doing so, though she nonetheless sustained multiple injuries to her vaginal area.[1]

Defendant also argues that one instance of anal penetration of the victim occurred, which renders the assault with intent to commit CSC through vaginal penetration speculative. However, the fact that another crime occurred, CSC-I, during which defendant penetrated the victim's anus,

---

[1] Contrary to defendant's argument on appeal, the length of time during which an assault occurs and specific evidence about the state of the victim's or defendant's clothing during an assault are not necessary to prove the offense of assault with intent to commit CSC involving penetration. See *Hoskins*, 342 Mich App at 204. Nonetheless, the evidence presented at trial contradicts defendant's assertion that no evidence showed the crime's duration or whether defendant or the victim were clothed. During defense counsel's cross-examination of the victim, he established that the victim's attempt to fight off defendant from penetrating her "continued for a while." With regard to their state of dress, the victim testified that defendant pulled off her shorts, and evidence also showed that the victim's underwear was around her ankles when police arrived while the assault was in progress.

does not negate his commission of another crime, assault with intent to commit CSC by penetrating the victim's vagina. Had defendant only intended to commit CSC by penetrating the victim anally, he would not have thrown the victim and pinned her down while she was lying on her back, and the victim would not have had to fight defendant from penetrating her while she was facing him. It was only after defendant's attempt to penetrate the victim failed because the victim fought him off that defendant was able to commit CSC-I through anal penetration when the victim was turned on her side.

Defendant also asserts that the evidence was insufficient to establish his intent to assault the victim through vaginal penetration because evidence showed that male DNA was found on a vulvar swab in the rape kit and that the male DNA did not match defendant's DNA. We hold that the DNA result from the vulvar swab does not undermine or render speculative evidence that defendant committed assault with intent to commit CSC through vaginal penetration. As discussed, evidence showed that defendant attempted to penetrate the victim vaginally, but the victim was able to prevent him from doing so by fighting him off. Because defendant did not vaginally penetrate the victim, defendant was charged with assault with intent to commit CSC for this conduct. Further, the nurse who conducted the victim's sexual assault examination explained that DNA can be tested if it is swabbed within 120 hours of when it was left. Whether the victim had vaginal intercourse with someone else within 120 hours (five days) of this assault does not contradict evidence that defendant attempted to commit CSC through vaginal penetration. Accordingly, defendant's argument in this regard lacks merit.[2]

## II. DOUBLE JEOPARDY

Defendant claims that his convictions of both CSC-I and assault with intent to commit CSC involving sexual penetration violated his constitutional rights because he was punished twice for the same offense. We disagree.

We review "de novo a claim that a conviction violates a defendant's right to be free from being twice placed in jeopardy for the same offense or being subject to multiple punishments for the same offense." *People v Dickinson*, 321 Mich App 1, 10; 909 NW2d 24 (2017).

The United States Constitution, US Const, Am V, and the Michigan Constitution, Const 1963, art 1, § 15, both prohibit multiple punishments for the same offense. *People v Duenez*,

---

[2] Defendant further asserts that the prosecutor used leading questions when examining the victim at trial. Defendant concedes that defense counsel did not object to plaintiff's examination of the victim at trial, and on appeal, defendant fails to articulate which questions to the victim were allegedly leading. Moreover, defendant cites no legal authority to establish that he is entitled any relief on the basis of this claim. Generally, to obtain appellate relief, a party must show prejudice or a pattern of eliciting inadmissible testimony. *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001). Defendant has not shown which testimony was inadmissible, how that testimony prejudiced him, or any pattern by the prosecutor. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

306 Mich App 85, 105-106; 854 NW2d 531 (2014). "The purpose of this prohibition, in a multiple-punishment context, is to prevent a court from imposing a sentence greater than that intended by the Legislature." *People v Baker*, 288 Mich App 378, 381; 792 NW2d 420, 422 (2010). To determine whether two punishments are permitted, our courts apply the test set forth in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932). As this Court explained:

> The *Blockburger* test focuses on the statutory elements of the offense, without considering whether a substantial overlap exists in the proofs offered to establish the offense. If each offense requires proof of elements that the other does not, the *Blockburger* test is satisfied and no double jeopardy violation is involved. [*Baker*, 288 Mich App at 382 (citations omitted).]

However, "[t]here is no violation of double jeopardy protections if one crime is complete before the other takes place, even if the offenses share common elements or one constitutes a lesser offense of the other." *People v Lugo*, 214 Mich App 699, 708; 542 NW2d 921 (1995).

Defendant's argument is largely dependent upon his position that, although his CSC-I conviction was established by the evidence, there was insufficient evidence presented at trial to show that defendant intended or attempted to vaginally penetrate the victim. As discussed, evidence supported the jury's finding that defendant attempted to sexually assault the victim through vaginal penetration and that the victim was able to prevent defendant from vaginally penetrating her by fighting him off. Defendant then injured the victim by forcibly penetrating the victim's anus with his penis. The prosecutor showed that these were not the "same offense" and that defendant attempted one act of vaginal penetration before he accomplished the other act of anal penetration. Because the crime of attempt with intent to commit CSC was complete before defendant committed CSC-I, defendant was not punished twice for the same crime. See *id*.

## III. SPEEDY TRIAL

Defendant claims that his constitutional rights were violated because his jury trial was delayed for more than 18 months. We disagree.

We review de novo whether a defendant was denied his right to a speedy trial. See *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). We review a trial court's ruling on a motion to dismiss for an abuse of discretion. *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005).

A defendant's right to a speedy trial is guaranteed under the United States Constitution, US Const, Am VI, and the Michigan Constitution, Const 1963, art 1 § 20. *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013). As this Court explained in *Rivera*, 301 Mich App at 193:

> Whether an accused's right to a speedy trial is violated depends on consideration of four factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Williams*, 475 Mich

at 261-262.[3]  When the delay is more than 18 months, prejudice is presumed, and the prosecution must show that no injury occurred. *Id*. at 262.  When the delay is less than 18 months, the defendant must prove that he or she suffered prejudice. *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999).  "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest."  *Williams*, 475 Mich at 261.

Defendant was arrested on June 29, 2019, and his trial began on August 4, 2021.  On April 19, 2021, the trial court held a hearing on defendant's motion for bond and his pro se motion to dismiss for violation of his right to a speedy trial.  The trial court observed that defendant's case was scheduled at the top of the court's list of jury trials and would move forward as soon as jury trials resumed in Calhoun County amid changing circumstances due to the COVID-19 pandemic.  The trial court further ruled that plaintiff was ready to go to trial and that the delay was not caused by the prosecutor's office, but by the global pandemic.  In denying defendant's motion, the trial court also observed that defendant did not show that he was prejudiced in his ability to defend his case by any delay.

We agree with defendant that the trial court erred by failing to recognize the presumption of prejudice to defendant because his trial was delayed for more than 18 months.  See *Williams*, 475 Mich at 262.  However, the trial court's denial of defendant's motion to dismiss did not constitute an abuse of discretion, and in spite of the trial court's legal error, the delay appears to have been unavoidable and not prejudicial to defendant.

On November 25, 2019, the trial court issued a "Criminal Jury Trial Notice," on which defendant's case was listed, among others, to be tried between December 4, 2019 and December 20, 2019.  On December 4, 2019, the trial court issued a notice scheduling defendant's trial for April 28, 2020.  However, in response to the COVID-19 pandemic, our Supreme Court issued various administrative orders that imposed emergency measures, adjourned criminal jury trials, and extended those adjournments with plans to return to full capacity.  See Administrative Order No. 2020-1, 505 Mich xcix; Administrative Order No. 2020-2, 505 Mich cii (2020); and Administrative Order No. 2020-19, 505 Mich clxvii (2020).  On the basis of those orders, defendant's trial was delayed until August 2021, which, according to the trial court, was one of the first criminal trials to be held in that court after the COVID-19 pandemic caused trials to be delayed.  In defendant's motion for bond, he specifically acknowledged that the pandemic caused the delay after the trial was scheduled for April 28, 2020.

Defendant asserts that there was no valid reason that his jury trial did not occur in December 2019 or before the orders issued in March 2020 in response to the COVID-19 pandemic.  However, the trial notice did not provide a specific trial date for defendant's jury trial in the initial criminal jury trial notice; it merely listed those criminal cases that *could* begin after December 3, 2019.  Defendant supports his argument with an analysis of filings in other cases listed on the criminal trial notice and asks us to take judicial notice of records from the Calhoun Circuit Court

---

[3] These factors are commonly called the "*Barker* factors" because they were first set forth in *Barker v Wingo*, 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972).  See *Williams*, 475 Mich at 261.

in cases involving other defendants. We decline to do so because defendant cannot show that events in other pending criminal cases had any bearing on when defendant's case was scheduled for trial. Further, had the pandemic delays not occurred, defendant's trial would have begun in April 2020, well within the 18 months contemplated by our caselaw.

Moreover, defendant acknowledges that, although he asked to be released on bond in this case, he should have been returned to prison while awaiting trial because he committed these crimes while he was on parole in another criminal case. According to his bond motion, while defendant was in jail, he was actually on "a parole hold from the Michigan Department of Corrections." Defendant asks us to order the Department of Corrections to explain why defendant was held in county jail rather than sent to prison to complete his other sentence. Defendant's "parole hold" in another case was not caused by any action or inaction by the trial court in this case, however. And, because defendant would have been in the custody of the Department of Corrections in any case, he would not be released from custody, so it is unclear how the delay of his trial caused by the COVID-19 pandemic prejudiced him through his continued incarceration. Accordingly, we hold that the trial court did not abuse its discretion by denying defendant's motion to dismiss, and we deny defendant's request for remand.

## IV. SHOWUP IDENTIFICATION

Defendant filed a Standard 4 brief in which he argues that the trial court violated his due-process rights when it admitted evidence of his identification during a showup conducted by law enforcement. We disagree.

Immediately after the assault, the victim described the perpetrator to police officers, and several witnesses, including the victim, told police that the attacker fled the scene on a bicycle. Shortly thereafter, an officer stopped defendant as he was riding a bike away from the scene of the crime. Police had the ambulance carrying the victim stop at the location of where defendant was apprehended, and she identified him as her attacker.

To preserve a constitutional claim that the trial court violated defendant's due-process rights, the defendant must raise the issue in the trial court. *People v Williams*, 245 Mich App 427, 430-431; 628 NW2d 80 (2001). Defendant did not move to suppress evidence regarding the identification the victim made immediately after the crime, and he raised no claim in the trial court that his due-process rights were violated by the identification. Therefore, this issue is not preserved for appellate review. This Court reviews "unpreserved constitutional error for plain error affecting a defendant's substantial rights." *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011).

As our Supreme Court explained in *People v Sammons*, 505 Mich 31, 41; 949 NW2d 36 (2020), "[d]ue process protects criminal defendants against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures." (Quotations marks and citations omitted.) "Exclusion of evidence of an identification is required when (1) the identification procedure was suggestive, (2) the suggestive nature of the procedure was unnecessary, and (3) the identification was unreliable." *Id.*, citing *Perry v New Hampshire*, 565 US 228, 238-239; 132 S Ct 716; 181 L Ed 2d 694 (2012).

As noted, defendant did not raise this issue below, so the trial court had no opportunity to review evidence from the preliminary examination to determine whether the showup identification evidence should have been excluded. We note that no evidence in the record supports defendant's primary argument that he was sitting in the back of a police car when the victim identified him as the person who sexually assaulted her. Rather, at the preliminary examination, when asked by defense counsel whether the police had "[j]ust one person standing to be looked at," the victim responded affirmatively. Further, although defendant was the only person shown to the victim, the victim correctly described defendant's physical features to police before the showup, and she made the identification in a nonsuggestive, public location immediately after the attack. Accordingly, we do not believe that the showup in the case was unduly suggestive. Were we hold otherwise, the evidence was nonetheless admissible because a showup identification was needed under the circumstances and the victim's identification was reliable. See *Sammons*, 505 Mich at 41.

The showup was necessary because the victim had to be taken to the hospital after the attack, and the police had an immediate interest in apprehending the person who committed a brutal sexual assault on a stranger walking in a public area of the city. Moreover, the showup identification was reliable because the victim correctly described defendant's physical features before the showup, she told police that he fled on a bike, and she made the identification immediately after the attack. It was also reliable because, as a victim of sexual assault, the victim "was forced to face the defendant 'directly and intimately' and was 'no casual observer.' " *Id.* at 52, quoting *Neil v Biggers*, 409 US 188, 200; 93 S Ct 375; 34 L Ed 2d 401 (1972). At the preliminary examination, the victim stated she was certain that defendant committed the attack because "if somebody's right here, you know, and choking you and holding you you're going to remember their face." For these reasons, defendant's claim that the showup identification evidence violated his due-process rights is without merit.

Affirmed.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kathleen A. Feeney