*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KARL RAMON GIBBS,

        Defendant-Appellant.

UNPUBLISHED
October 16, 2025
10:22 AM

No. 371173
Wayne Circuit Court
LC No. 21-003578-01-FC

Before: FEENEY, P.J., and BORRELLO and BAZZI, JJ.

PER CURIAM.

Defendant, Karl Ramon Gibbs, appeals as of right his jury trial convictions of carjacking, MCL 750.529a; and assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1). The trial court sentenced Gibbs as a fourth-offense habitual offender, MCL 769.12, to concurrent incarceration terms of 25 to 40 years. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from Gibbs's alleged carjacking and assault of Ahmad Karim, an elderly man, in Detroit, Michigan, on February 22, 2021. Karim testified[1] that in 2021, an acquaintance named Karla Young briefly stayed in his house in Detroit. When he arrived home on February 22, 2021, Gibbs and Gibbs's girlfriend, Sheena Stout, were among Young's visitors, who were gathered in Karim's basement. After Gibbs and Stout asked Karim for a ride home, the group left the premises in Karim's 2012 GMC Sierra truck. At Gibbs's direction, Karim pulled into a driveway, parked the vehicle, and turned off the engine. Gibbs "grabbed" Karim and "started beating" him. Gibbs, who described himself to Karim as a "dope man or a pill man," hit Karim four times on the face with what Karim believed was a brick or brass knuckles that Gibbs had retrieved from his pocket. Gibbs then went to the driver's side of the vehicle, pulled Karim out of the vehicle, and struck Karim again. Ultimately, Gibbs led Karim to the other side of the road and

---

[1] Karim's preliminary examination testimony was read into the record after he was declared unavailable for trial.

hit him on the head, causing Karim to fall to the ground. Gibbs got in Karim's truck and drove away. Karim managed to crawl across the street and obtain assistance. After the police arrived, Karim was transported to the hospital where he received staples in his head for the injuries, which Karim described as his "head [being] all tore open."

Stout, who testified for the prosecution, explained that Karim asked her and her "on and off again" boyfriend to leave his house and agreed to drive them to a bus stop because of the snowy weather. Before reaching the bus stop, Karim stopped the vehicle and requested money for gas. In turn, Gibbs got out of the passenger side, opened the driver's side door, hit Karim in the head "with something," told Karim to "empty out his pockets," "threw him out" of the vehicle, and drove away. Stout did not see what Gibbs had in his hand when he hit Karim, but she was aware that Gibbs regularly carried "a brick or a big cement bolder [sic] in his pocket." As Gibbs was driving, Stout advised Gibbs not to push the OnStar GPS tracker button that was on the rearview mirror, but Gibbs pushed it. After driving for approximately 20 minutes, Gibbs parked in the driveway of a house in Dearborn Heights, and Gibbs, Stout, and Gibbs's friend moved power tools and tool bags from Karim's truck into a black car that was in the driveway. The police arrived soon after Gibbs and Stout reentered Karim's truck. Gibbs did not immediately comply with the police orders and attempted to flee, but he was caught.[2]

Gibbs testified on his own behalf and denied any wrongdoing. Gibbs testified that himself, Stout, and others used drugs in Karim's basement on February 22, 2021, and they decided to leave because Stout believed that someone had gone through her bag. Karim had offered to drive them to a certain area, but instead stopped at different houses along the way. During the last stop, Karim asked Gibbs for $10, which Gibbs gave him, and Karim then told Gibbs to take his truck because he wanted to stay at this house. As Gibbs was driving Karim's truck, he pressed the OnStar tracker button, even though Stout had told him not to do so. Ultimately, Gibbs testified that he pulled into a driveway to obtain assistance for a broken headlight and, while waiting for assistance, police arrived and arrested him. The defense asserted that Karim, an elderly man who had been diagnosed with psychosis, was "confused" about the incident and who assaulted him, and that Gibbs would not have pressed the vehicle's OnStar button to provide the vehicle's location if he had intended to steal it.

Following a jury trial, Gibbs was convicted and sentenced as provided earlier. This appeal ensued.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Gibbs argues that he is entitled to a new trial because he was deprived of effective assistance of counsel in several respects. We disagree.

A claim of ineffective assistance of counsel is preserved "by moving in the trial court for a new trial or an evidentiary hearing," *People v Head*, 323 Mich App 526, 538-539; 917 NW2d

---

[2] A police witness explained that Karim's vehicle pinged as stolen in Dearborn Heights. Gibbs did not comply with repeated commands to show his hands. Ultimately, an officer used a "leg strike," which caused Gibbs to fall to the ground, and another officer handcuffed Gibbs.

752 (2018), or by moving in this Court to remand for an evidentiary hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Because Gibbs did not move in the trial court for a new trial or an evidentiary hearing, or move in this Court to remand for an evidentiary hearing, our review of these ineffective-assistance claims are limited to errors apparent on the record. *Id.*; *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). We review for clear error a trial court's factual findings, and questions of constitutional law are reviewed de novo. *People v Shaw*, 315 Mich App 668, 671-672; 892 NW2d 15 (2016). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id.* The effective assistance of counsel is presumed, and the burden is on the defendant to establish the contrary. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). A defendant also has the burden of establishing the factual predicate for an ineffective-assistance-of-counsel claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

Decisions regarding what arguments to make, what evidence to present, and whether to call witnesses are matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and counsel has wide discretion in matters of trial strategy, *Heft*, 299 Mich App at 80. We will not substitute our judgment for that of counsel regarding matters of trial strategy, nor will we assess counsel's competence with the benefit of hindsight. *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019). However, while deference is given to counsel's strategic decisions, "a court cannot insulate the review of counsel's performance by calling it trial strategy; counsel's strategy must be sound, and the decisions as to it objectively reasonable." *People v Ackley*, 497 Mich 381, 388-389; 870 NW2d 858 (2015) (quotation marks and citations omitted).

## A. FAILURE TO PRESENT A DEFENSE

Gibbs first takes exception with defense counsel's alleged failure to "provide a defense," but Gibbs simultaneously acknowledges that counsel did in fact provide a defense. Defense counsel called Gibbs as a witness and effectively questioned him, which allowed Gibbs the opportunity to provide his account of what occurred. Further, the record demonstrates that defense counsel clearly articulated why the jury should conclude that Gibbs was not the person who assaulted Karim and that Gibbs did not intend to steal Karim's truck. Defense counsel delineated Karim's documented mental illness issues, and argued that because of Karim's diagnosed psychosis, he was confused about who assaulted him and what occurred when he gave Gibbs and Stout a ride. Defense counsel also argued that Gibbs could not have intended to steal Karim's truck because he engaged the vehicle's OnStar location service, which provided a method to ping the exact location of the vehicle. Gibbs fails to indicate what additional *rational* argument defense counsel should have made. To the extent that Gibbs relies on the fact that defense counsel's arguments were not successful, nothing in the record suggests that defense counsel's presentation

-3-

of the defense was unreasonable or prejudicial. As previously noted, counsel's decisions about how to argue the evidence are matters of trial strategy, *Rockey*, 237 Mich App at 76, which we will not assess with the benefit of hindsight, *Traver (On Remand)*, 328 Mich App at 422-423. The fact that defense counsel's defense strategy may not have worked does not constitute ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

## B. FAILURE TO CALL WITNESSES

Gibbs further faults defense counsel for failing to call witnesses, other than Gibbs, who were in Karim's basement and may have discredited the testimony of Karim and Stout regarding Gibbs's identity as Karim's assailant. Specifically, Gibbs asserts that these potential witnesses could have testified that Karim was "roughed up" by other men before Karim left the premises to give Gibbs and Stout a ride. Although Gibbs asserts that the proposed witnesses' testimony would have been exculpatory, he has not provided any witness affidavits, or identified any other evidence of record, showing that these proposed witnesses were willing to testify at trial and that their testimony would have been favorable. In fact, Gibbs does not even provide a name for any of the witnesses. Absent such a showing, Gibbs cannot establish that he was prejudiced by defense counsel's failure to present these unknown proposed witnesses. Additionally, even if these witnesses were called and testified as Gibbs claims they would have, the evidence would not be exculpatory because the "roughing up" occurred before the offenses of carjacking and AWIGBH. Indeed, Karim, Stout and even Gibbs all testified that they were the only three people present during the episode that formed the basis of the charges against Gibbs. Accordingly, Gibbs has not demonstrated that defense counsel was ineffective in this regard.

## C. FAILURE TO PRESENT EVIDENCE

Gibbs additionally contests defense counsel's failure to present the jacket that Gibbs was wearing during the subject incident to discredit Stout's testimony that Gibbs "had slits in his jacket" where he kept a brick or boulder. Preliminarily, Stout did not testify that the jacket Gibbs wore during the incident "had slits." Instead, Stout testified that Gibbs "would always carry a brick or a big cement bolder [sic] in his *pocket*," "but would *sometimes* cut the inside of the jacket to where he could stick something in the corner[.]" (Emphasis added.) More significantly, however, Gibbs has not made any offer of proof, or identified any other evidence of record, showing that the jacket that he was wearing did not have pockets or any other area capable of carrying a brick. Indeed, defense counsel could have chosen not to seek to admit the jacket in evidence for various reasons, including that the garment would not have been supportive and may have been harmful to the defense if it did have slits or otherwise indicate that a rock or boulder had been kept in the jacket. Accordingly, Gibbs has not demonstrated that defense counsel was ineffective on this basis.

## D. FAILURE TO OBJECT TO ADMISSION OF KARIM'S PRIOR TESTIMONY

The record belies Gibbs's claim that defense counsel was ineffective because he "raised no objection" to the admission of Karim's preliminary examination testimony. To the contrary, on the first day of trial, the prosecution informed the trial court that Karim could not be located for trial and that, if the trial court found due diligence, the prosecution would seek admission of

Karim's prior testimony. In turn, defense counsel advanced an extensive argument, requesting that the trial court find that the prosecution did not exercise due diligence to produce Karim at trial. Defense counsel also argued that Karim's prior testimony was not satisfactorily reliable. Because the record is clear that defense counsel objected to the prosecution's motion to admit Karim's preliminary examination testimony, Gibbs has not established the factual predicate for his claim that defense counsel was ineffective for failing to do so. *Douglas*, 496 Mich at 592.[3]

## E. FAILURE TO INFORM DEFENDANT OF THE MANDATORY 25-YEAR MINIMUM SENTENCE

Gibbs also faults defense counsel for failing to inform Gibbs of the mandatory 25-year minimum sentence for a fourth-offense habitual offender. Even assuming that defense counsel did not expressly discuss the potential sentence Gibbs faced if convicted, Gibbs does not explain how he was prejudiced because of the alleged conduct. During trial, there was a discussion of whether Gibbs would accept the prosecution's prior offer to plead guilty to an added count of "unlawful driving away [of] an automobile and to plead to the habitual offender fourth offense notice" with a sentence agreement of 4 to 15 years' incarceration. During the discussion, Gibbs was informed, *inter alia*, that, in exchange, the prosecution would dismiss the charges of carjacking "which carries a maximum penalty of life" and AWIGBH "which carries a maximum penalty of life." Gibbs was further advised that the offense of unlawful driving away of an automobile "carries a maximum penalty of 5 years but because the Defendant is a habitual fourth offense notice. . . the maximum penalty is life." Gibbs stated that he understood. Thus, Gibbs was aware that he faced the possibility of receiving a sentence even greater than 25 years. Moreover, Gibbs refused any plea offer because he maintained his innocence—and continues to do so—specifically refusing to admit that he drove away Karim's truck without permission.

Moreover, the record is unclear if the trial court sentenced Gibbs to the mandatory 25-year minimum sentence under MCL 769.12(1)(a). Instead, throughout the sentencing proceedings, the parties and the trial court discussed only the sentencing guidelines, and they agreed that Gibbs's minimum sentence range was 126 to 420 months. Thereafter, defense counsel requested that the court depart below the guidelines, and the prosecution stated that "a sentence within the guideline range is appropriate[.]" Ultimately, the trial court stated, "I think a guideline sentence is appropriate." Given this record, Gibbs has not demonstrated how, but for defense counsel's failure

---

[3] We note that the record reflects that the prosecution exercised due diligence in attempting to present Karim for trial given the prosecution personally attempted to contact Karim, and Karim was likely "civilly committed" at the time of trial, and he was deemed "legally insane per a court order." Regarding whether the contested testimony was satisfactorily reliable, Karim was found legally insane several months after the preliminary examination, and the court noted that any discrepancies in his testimony were for the jury to resolve regarding credibility. Thus, even if defense counsel neglected to object to the admission of Karim's previous testimony, such an objection appears futile because the prosecution met its due-diligence burden, and the testimony was deemed satisfactorily reliable despite Karim's purported mental health issues. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.")

to specifically inform Gibbs of the possibility of a mandatory 25-year minimum sentence, the results of the proceedings would have been different. *Nix*, 301 Mich App at 207. In sum, Gibbs has not demonstrated that he was denied the effective assistance of counsel at trial.

## III. SUFFICIENCY OF THE EVIDENCE–CARJACKING

Gibbs argues that the prosecution failed to provide sufficient evidence to sustain his conviction of carjacking. We disagree.

Preliminarily, Gibbs did not argue for a directed verdict on the charge of carjacking in the trial court as he claims, and his claim on appeal is presented simply as a challenge to the sufficiency of the evidence for that offense. No specific action is required to preserve a sufficiency-of-the-evidence issue in a criminal case. *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). We review de novo a challenge to the sufficiency of the evidence. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). When ascertaining whether sufficient evidence was presented at trial to support a conviction, we view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Further, the prosecution is not required to negate "every reasonable theory consistent with innocence" as long as the elements of the offense are proven beyond a reasonable doubt. *Nowack*, 462 Mich at 400.

The carjacking statute, MCL 750.529a, provides, in relevant part:

(1) A person who in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence, or who puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years.

(2) As used in this section, "in the course of committing a larceny of a motor vehicle" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the motor vehicle.

In this case, Gibbs's sufficiency challenge is focused only on the prosecution's failure to prove beyond a reasonable doubt that Gibbs had the requisite intent. Carjacking is a specific intent crime that requires the prosecution to prove beyond a reasonable doubt that the defendant "had the intent to steal or permanently deprive" a person of the motor vehicle. *People v Smith*, 336 Mich App 297, 307; 970 NW2d 450 (2021). The specific intent to permanently deprive the owner of his property "does not require, in a literal sense, that a thief have an intent to permanently deprive the owner of the property." *People v Harverson*, 291 Mich App 171, 178; 804 NW2d 757 (2010) (quotation marks and citation omitted). Rather, "the intent to permanently deprive includes the retention of property without the purpose to return it within a reasonable time or the retention of property with the intent to return the property on the condition that the owner pay some

compensation for its return." *Id*. "Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent." *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014).

Viewed in a light most favorable to the prosecution, there was ample evidence to find that Gibbs had the requisite intent to prove carjacking beyond a reasonable doubt. Gibbs makes much of his and Stout's testimony that he pushed the OnStar GPS tracker button, which ultimately led to the vehicle being located by the police. While relying on this testimony, Gibbs completely ignores the overwhelming evidence that demonstrates his intention to steal Karim's vehicle. There was evidence that Gibbs (1) struck Karim in the head multiple times, causing him to bleed, (2) pulled Karim out of the vehicle, (3) struck Karim again, causing him to fall to the ground, and (4) then drove the vehicle for 20 minutes before parking in another city and unloading tools from the vehicle. Additionally, when the police arrived, Gibbs did not comply with the officers' commands and attempted to flee. Considering this evidence and the reasonable inferences from it, a jury could have rationally inferred that Gibbs had the intent to steal Karim's vehicle when he assaulted Karim, pulled him out of the vehicle, and drove the vehicle away.

Furthermore, Gibbs's challenges, including what inferences could be drawn from the evidence that he pushed the OnStar button, are related to the weight and credibility of the evidence, which were issues for the jury to resolve. *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). The jury heard Gibbs's explanation for why he pushed the OnStar button after he drove away, and the jury was not required to believe Gibb's claim that he did so because he did not intend to keep the vehicle. Rather, the jury was free to accept or reject the theory of either party in light of the evidence presented at trial, and we will not interfere with the jury's role of determining issues of weight and credibility. *People v Baskerville*, 333 Mich App 276, 283; 963 NW2d 620 (2020). Further, Gibbs's reliance on his view of what inferences should be drawn from the evidence disregards that we are required to resolve all conflicts in the evidence in favor of the prosecution, *id*.; that this deferential standard of review is the same whether the evidence is direct or circumstantial, *Nowack*, 462 Mich at 400; and that it is well established that "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime," *id*. (quotation marks and citation omitted). Applying these standards, sufficient evidence was presented to sustain Gibbs's conviction of carjacking beyond a reasonable doubt, and we will not disturb the jury's verdict.

## IV. DENIAL OF MOTION FOR DIRECTED VERDICT–AWIGBH

Gibbs further argues that the trial court erred by denying his motion for a directed verdict for the offense of AWIGBH. We disagree.

We review de novo a trial court's decision denying a motion for a directed verdict. *People v Chelmicki*, 305 Mich App 58, 64; 850 NW2d 612 (2014). The same standard for reviewing the sufficiency of the evidence applies to a motion for a directed verdict. *People v Thurmond*, 348 Mich App 715, 722; 20 NW3d 311 (2023). However, when reviewing the trial court's decision on a motion for a directed verdict, only the evidence presented by the prosecution "up to the time the motion is made" is considered. *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001).

Gibbs does not challenge the specific elements of AWIGBH, only the sufficiency of the evidence to support his identity as the person who assaulted Karim.[4] Identity is an essential element in a criminal prosecution, *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018), and thus, the prosecution must prove the identity of the defendant as the perpetrator of a charged offense beyond a reasonable doubt, *Miller*, 326 Mich App at 735. Positive identification by a witness or circumstantial evidence and reasonable inferences arising from it may be sufficient to support a conviction of a crime. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000); *Nowack*, 462 Mich at 400. The credibility of identification testimony is for the trier of fact to resolve and we will not resolve it anew. *Davis*, 241 Mich App at 700.

In the present case, soon after the incident, Karim, the victim of the charged assault, unequivocally identified Gibbs as the perpetrator from a six-person photographic array. Karim explained that he recognized Gibbs in the photograph because of "his eyes and nose and all that." The administering police officer explained that Karim instantly selected Gibbs from the array. Subsequently, during the preliminary examination, Karim identified Gibbs as the perpetrator multiple times. For example, when identifying Gibbs in court, Karim described him as "the guy that was hitting" him. Karim also explained that Gibbs "don't have the mustache but he look [sic] just like him to me." This evidence, if believed, was sufficient to establish Gibbs's identity as the perpetrator beyond a reasonable doubt. *Id.* In addition to Karim's positive identification of Gibbs, Gibbs's former girlfriend, Stout, testified at trial that she saw Gibbs hit Karim in the head, thereby enhancing the reliability of Karim's identification testimony. And, as previously stated, it was up to the jury to determine the credibility of the identification evidence presented at trial. *Id.* Further, Gibbs's own testimony placed him in the vehicle with Karim at the time of the alleged assault. Accordingly, viewed in a light most favorable to the prosecution, there was sufficient evidence to establish Gibbs's identity as the perpetrator of AWIGBH beyond a reasonable doubt.

## V. CRUEL OR UNUSUAL PUNISHMENT

Gibbs argues that he is entitled to resentencing because his 25-year minimum sentence constitutes cruel or unusual punishment. We disagree.

To preserve a claim that a defendant's sentence is unconstitutionally cruel or unusual, the defendant must raise the claim in the trial court. See *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Because defendant did not argue below that his 25-year minimum sentence would be unconstitutionally cruel or unusual punishment, his claim is unpreserved. We review this unpreserved claim for plain error affecting defendant's substantial rights. *Id.* An error is plain if it is "clear or obvious." *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018). "Substantial rights are affected when the defendant is prejudiced, meaning the error affected the outcome of the trial." *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012). "The

---

[4] MCL 750.84(1)(a) prohibits the assault of "another person with intent to do great bodily harm, less than the crime of murder." "The elements of assault with intent to do great bodily harm less than murder are: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (quotation marks and citation omitted).

reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Thorpe*, 504 Mich 230, 252-253; 934 NW2d 693 (2019). "The defendant has the burden of establishing entitlement to relief under plain-error review." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Gibbs's argument is difficult to follow. Gibbs appears to be challenging his sentence as cruel or unusual on the basis that the trial court improperly considered a charge of resisting or obstructing a police officer (resisting or obstructing), MCL 750.81d(1), that arose from the criminal episode in this matter, but was charged in a separate case, to determine the proper score for offense variable (OV) 13 (continuing pattern of criminal behavior) of the sentencing guidelines. As discussed below, the trial court assigned 25 points for OV 13, on the ground that the pending resisting or obstructing charge formed a third qualifying offense against a person. The additional 25 points for OV 13 altered Gibbs's placement from OV Level II to OV Level III, and increased his minimum sentence range from 108 to 180 months to 126 to 420 months. Subsequently, the prosecution, apparently being satisfied with the sentence range, then moved to dismiss the pending resisting or obstructing case.

Under these facts, Gibbs argues that the prosecution improperly "utilized the [resisting or obstructing] charge that was not proved beyond a reasonable doubt" to "stack[] additional charges" "for the sole purpose" to enhance the maximum sentence, "which is an insult to justice and the very idea of constitutional protection." However, for the reasons detailed below, there was no malfeasance in considering the resisting or obstructing offense to score OV 13, and the variable was properly scored. And while Gibbs asserts that the scoring of this variable resulted in his sentence being cruel or unusual, he provides no meaningful analysis that addressed his specific argument. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). A defendant abandons his claims when he fails to make a meaningful argument in support of his position. See MCR 7.212(C)(7); *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Consequently, Gibbs has not sufficiently presented this claim and it has been abandoned.

VI. SCORING OF OFFENSE VARIABLE 13

Gibbs lastly argues that the trial court erred when it assessed 25 points for OV 13 because he engaged in a single felonious act. We disagree.

To preserve a challenge to the scoring of the sentencing guidelines, the challenge must be raised at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in this Court. MCL 769.34(10); MCR 6.429(C); *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016). Although Gibbs objected to the trial court's scoring of OV 13 at sentencing, Gibbs did so on a ground different from what is advanced on appeal, i.e., that the trial court could only consider convictions. Accordingly, Gibbs has failed to preserve the issue for appeal. *Chelmicki*, 305 Mich App at 69. We review a defendant's unpreserved challenge to the trial court's scoring of OV 13 of the sentencing guidelines for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763-764.

OV 13 addresses a "continuing pattern of criminal behavior." MCL 777.43(1). The trial court must score 25 points for OV 13 if the "offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). In determining the proper score under OV 13, all crimes within a five-year period, including the sentencing offense, must be counted, regardless whether the offense resulted in a conviction. MCL 777.43(2)(a). And a pattern of criminal activity may be based on multiple offenses arising from the same event. *People v Harmon*, 248 Mich App 522, 532; 640 NW2d 314 (2001). Further, a sentencing court is permitted to consider charges that were dismissed if there is a preponderance of the evidence supporting that the offense took place. *Nix*, 301 Mich App at 205.

We agree with the trial court's assignment of 25 points for OV 13 because Gibbs committed three separate felonious acts, each of which qualify as an offense against a person.[5] Although Gibbs presently argues that he engaged in only one felonious act when he hit Karim in the head once, defense counsel conceded in the trial court that Gibbs's convictions of AWIGBH and carjacking qualify as two crimes against a person for purposes of scoring OV 13. Indeed, the evidence demonstrates that Gibbs hit Karim in the head multiples times, which established the AWIGBH offense, and then pulled Karim out of the truck and drove away, which formed the basis of the carjacking offense. This Court has explained that "there is nothing in the language of MCL 777.43(1)(c) to support [the] argument that multiple convictions arising from the same incident cannot be considered for scoring OV 13." *People v Gibbs*, 299 Mich App 473, 487; 830 NW2d 821 (2013).

Further, in the trial court, Gibbs maintained that he does not have a third qualifying offense to support a 25-point assignment for OV 13. Specifically, in a different lower court case, the prosecution charged Gibbs with resisting or obstructing,[6] which arose from Gibbs's actions when the police tried to arrest him after he committed the crimes of AWIGBH and carjacking. Gibbs argued that this offense should not qualify because there was no conviction and, on appeal, emphasizes that the prosecution dismissed that case after Gibbs was sentenced in this case. However, when considering the proper score for OV 13, the trial court aptly cited that, under MCL 777.43, the offense did not have to result in a conviction, and the court recounted that testimony was presented during trial that proved by a preponderance of the evidence that Gibbs committed the offense of resisting or obstructing. The fact that the prosecution moved to dismiss the resisting and obstructing case "[b]ased on the sentence" for Gibbs's AWIGBH and carjacking convictions is of no consequence. *Nix*, 301 Mich App at 205. Because Gibbs clearly committed three separate

---

[5] AWIGBH and carjacking both are designated as an offense against a person. See MCL 777.16d (AWIGBH) and MCL 777.16y (carjacking).

[6] Resisting or obstructing a police officer is designated as an offense against a person. MCL 777.16d.

qualifying offenses against a person during the criminal episode, the trial court correctly assessed 25 points for OV 13.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Mariam S. Bazzi