*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

PATRICK GORDON REED,

Defendant-Appellant.

UNPUBLISHED
May 27, 2026
2:15 PM

No. 363564
Grand Traverse Circuit Court
LC No. 2021-013855-FC

Before: TREBILCOCK, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Following a jury trial, defendant appeals his convictions for first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(*i*), two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (victim under 13), a third count of CSC-II, MCL 750.520c(1)(b)(*i*) (victim between 13 and 16 and actor is a member of the same household), domestic violence, third-offense, MCL 750.81(4), and witness bribery or intimidation, MCL 750.122. Defendant also challenges his sentence for CSC-I as a second-habitual offender, MCL 769.10. We vacate the sentence imposed for defendant's CSC-I conviction and remand for resentencing as to that count, but otherwise affirm his convictions and remaining sentences.

## I. BACKGROUND

Before his first marriage, defendant fathered a daughter and a son. Defendant eventually married his second wife, who had three daughters of her own. The CSC charges and the domestic violence charge in this case all arise out of defendant's mistreatment of his three stepdaughters. The middle stepdaughter disclosed to her mother, defendant's second wife, that defendant had sexually assaulted her when they were on a trip out of town. That stepdaughter then also reported that defendant committed several acts of digital penetration on her at different times when she was alone with him. Defendant's second wife reported the abuse to a worker at a woman's shelter who then informed Children's Protective Services (CPS).

Notably, the middle stepdaughter had a genetic disorder that caused her to unintentionally generate false memories. Defendant's second wife knew that her daughter had this condition, and she told CPS that the middle stepdaughter would need a professional examination to prevent any

unintentional coaching. After the middle stepdaughter disclosed the abuse, the youngest stepdaughter also disclosed that defendant had sexually assaulted her.

At trial, the middle stepdaughter testified that defendant had physically assaulted her by slamming her into a wall. There was other consistent testimony that defendant would push and throw the children when he was angry, and the mother of his biological son testified that he had been abusive toward her during their relationship. Another of defendant's prior girlfriends also testified that defendant had threatened to push her down stairs to end her pregnancy.

In addition to this physical abuse, defendant's first wife testified that he had coerced her into having sex with other men while filming the encounters, and defendant's second wife testified that he had done the same to her. The oldest stepdaughter also testified that defendant told her that he liked seeing his second wife have sex with other men.

Because defendant had requested that encounters with these other men be recorded, the police searched defendant's phone to determine if he had recorded his encounters with the stepdaughters. While searching defendant's phone, the police discovered that defendant had searched the internet for "real stepdaughter porn" and "big stepdaddy in bed." That data was shared with the jury at trial.

During the second wife's testimony, she also admitted that a different husband had physically assaulted her. However, during the trial related to that assault, the second wife admitted that she had lied to claim that she was not hurt, and she had coached the children to tell CPS that the person who committed the assault was a "good person." Defendant attempted to impeach his second wife and undermine her credibility by arguing that she had also coached the witnesses in this case.

While the trial in this case was occurring, defendant's biological daughter disclosed that defendant had sexually assaulted her. Criminal charges related to her assault were processed in a different case, but defendant's biological daughter testified in this case regarding the sexual abuse that she suffered. Relevant to this appeal, defendant called his daughter before she testified. He stated that he knew that she was going to testify at the trial for this case, but he assumed that it would be in his defense. During their phone call, defendant spent hours telling his daughter that she should not tell anyone about the abuse that she suffered because it would make her brother grow up without a father. After their phone call, defendant told his daughter that he would pay for her driver's training, buy her a new cell phone, and get her a new car.

There was also testimony regarding an incident in which defendant had shown his testicles to one of his stepdaughters while asking them if they "wanted to see the tumor in his stomach." Defendant stated that he later regretted making this "joke" because it was not appropriate for children, and he vowed that he had become a changed man after that incident. However, during the trial, defendant was recorded on a phone call with his then-girlfriend, in the presence of her 15-year-old daughter, where he made a crude joke about penises and vaginas. This recording was played for the jury.

The jury found defendant guilty as described above. For the CSC-I conviction, the trial court calculated defendant's Prior Record Variable score at 30 points, and it calculated defendant's

Offense Variable (OV) score at 60 points after assessing 10 points for OV 9. This resulted in a recommended minimum sentencing guidelines range of 126 months to 262 months' incarceration after enhancing the maximum limit of his minimum sentencing guidelines range as a second-habitual offender, MCL 769.10. The trial court sentenced defendant to 262 months to 480 months' incarceration.

Defendant now appeals.

## II. WITNESS BRIBERY CHARGE

Defendant first argues that there was insufficient evidence to support his witness-bribery conviction because there was no evidence that he tried to induce his daughter to give false testimony or absent herself from trial. We disagree.

## A. STANDARD OF REVIEW

"When reviewing a defendant's challenge to the sufficiency of the evidence, we review the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (quotation marks and citation omitted). The appellate court "is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). Guilt may be established on the basis of "circumstantial evidence and reasonable inferences arising from that evidence." *Williams*, 294 Mich App at 471 (quotation marks, brackets, and citation omitted).

## B. DISCUSSION

The witness-bribery statute, MCL 750.122, provides, in relevant part:

(1) A person shall not give, offer to give, or promise anything of value to an individual for any of the following purposes:

(a) To discourage any individual from attending a present or future official proceeding as a witness, testifying at a present or future official proceeding, or giving information at a present or future official proceeding.

(b) To influence any individual's testimony at a present or future official proceeding.

(c) To encourage any individual to avoid legal process, to withhold testimony, or to testify falsely in a present or future official proceeding.

The statute exists to identify and criminalize ways in which a person may try to prevent a witness from appearing at a proceeding or providing truthful information at a proceeding, but it does not criminalize merely encouraging "an individual to withdraw a criminal complaint or discourage the filing of suit." *Swain v Morse*, 332 Mich App 510, 532-533; 957 NW2d 396 (2020).

Defendant argues that the statute specifically requires that he must have attempted to influence his daughter to provide *false* testimony, contrary to the plain language of the statute. MCL 750.122(1)(c) includes "to withhold testimony, *or* to testify falsely" (emphasis added). The word "or" indicates that the Legislature intended those terms to have different meanings. See *People v Kowalski*, 489 Mich 488, 499; 803 NW2d 200 (2011) ("Because the Legislature used the disjunctive term 'or,' it is clear that there are two ways to commit the crime[.]"). Therefore, it is sufficient if defendant tried to encourage his daughter to omit information, even if her testimony was otherwise truthful. Defendant correctly observes that it is an affirmative defense under MCL 750.122(4) that a defendant tried to encourage the witness to be truthful. But that subsection does not change the elements of the crime. "[A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *People v Davis*, 468 Mich 77, 79; 658 NW2d 800 (2003) (quotation marks and citation omitted).

The evidence established that defendant's biological daughter was initially involved in strategy sessions regarding defendant's defense to this case. She was named as a witness, and, at the preliminary examination, one of defendant's stepdaughters testified that defendant once threw his daughter at a table, so defendant should have known that his daughter's testimony *could* be unfavorable to him. His daughter testified that defendant did not expressly tell her what to say, but he communicated to her that she should not "talk bad about" him or discuss what happened at home, and she should strive to avoid losing her father. By necessary implication, that would include omitting any abuse that his daughter observed or experienced. Defendant even testified that he expected his daughter to be a witness on his behalf, which would be consistent with the numerous character witnesses he called, so he clearly had expectations regarding the kind of testimony that his daughter would—or would not—provide. But his daughter testified that, after she became comfortable with her placement with a guardian, she decided that she needed to tell someone about the sexual assault, so she called defendant, specifically asked him about the incident, and, during an hours-long, highly emotional call, defendant exhorted her not to tell anyone. The next day, defendant began making promises to her that were substantially more generous than promises he had made in the past. Given the timing and context, and crediting the daughter's testimony over defendant's testimony, the jury could reasonably have inferred that defendant was attempting to purchase his daughter's continued silence—including as a witness in this case.

### III. ADMISSION OF PREJUDICIAL EVIDENCE

Defendant next argues that certain evidence that his phone was used to search for "stepdaughter" pornography on one occasion and that he told a gross sexual joke to his adult girlfriend while he was awaiting trial should have been excluded as significantly more prejudicial than probative. Defendant also argues that the evidence from his second wife and two of his former relationship partners regarding the domestic abuse that he inflicted on them was irrelevant and also significantly more prejudicial than probative. We disagree.

### A. STANDARD OF REVIEW

"The decision whether to admit evidence is within the trial court's discretion, which will be reversed only where there is an abuse of discretion." *People v Gursky*, 486 Mich 596, 606; 786

NW2d 579 (2010). This Court reviews de novo preliminary questions of admissibility, and a trial court necessarily abuses its discretion by admitting "evidence that is inadmissible as a matter of law." *Id*. Improperly admitted evidence is generally not grounds for reversal unless the defendant establishes that "absent the error, it is more probable than not that a different outcome would have resulted." *Id*. at 619 (quotation marks and citation omitted).

## B. GENERAL LEGAL PRINCIPLES

In general, evidence is admissible if it is relevant, meaning it tends to make a fact of consequence to the determination of the case more probable or less probable. *People v Jones*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 362854); slip op at 3, lv pending. But under MRE 403, "even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Id*. (quotation marks and citation omitted). This Court "must apply the balancing test and weigh the probativeness or relevance of the evidence against the unfair prejudice." *Id*. at ___; slip op at 3-4 (quotation marks and citation omitted). "Evidence is unfairly prejudicial if it has a tendency to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Berklund*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367568); slip op at 9 (quotation marks and citation omitted).

Under MCL 768.27b(1), if a defendant is charged with domestic violence or sexual assault, evidence that he previously committed other acts of domestic violence or sexual assault is admissible for any relevant purpose, subject to exclusion under MRE 403. "Prior acts of domestic violence can be admissible under MCL 768.27b regardless of whether the acts were identical to the charged offense." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). In addition to the principles for considering whether to exclude evidence under MRE 403, any propensity inference should be weighed in favor of admission, but the court may weigh other considerations, including but not limited to:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Berklund*, ___ Mich App at ___; slip op at 10 (quotation marks and citation omitted).]

"Credibility of a witness is almost always at issue, and, thus, evidence bearing on that credibility is always relevant." *People v Spaulding*, 332 Mich App 638, 660; 957 NW2d 843 (2020).

## C. WEB SEARCH HISTORY

Defendant objects to the admission of evidence that his phone was used to search for "stepdaughter" pornography. Defendant admits that there might be some probative value to evidence that he was interested in sexualizing his stepdaughter, but he argues that the relevance was marginal. We disagree.

This Court has held that, in a criminal sexual conduct case, evidence that the defendant searched the internet using terms descriptive of the victims was highly relevant to the defendant's state of mind and motive. *People v Wisniewski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 361978); slip op at 8-9. In *Wisniewski*, the trial court admitted the defendant's search history for "images of '8 year old blonde girl[s]' and '10 year old blonde girl[s],' because the victims in [that] case were of those young ages," while also excluding numerous other searches as unfairly prejudicial. *Id*. at ___; slip op at 9. This Court found "nothing 'unfair[ly]' prejudicial about using this evidence against [the] defendant" because the specific charges all "involved a sexual assault against a young girl[.]" *Id*. at ___; slip op at 9.

In this case, defendant's search for "stepdaughter" related pornography was similarly indicative of his state of mind and not unfairly prejudicial given that he was charged with sexually assaulting his stepdaughters. Furthermore, similarly to *Wisniewski*, the trial court here was mindful of the danger of unfair prejudice and excluded evidence of other searches, including for "Super Tiny Tits Porn Videos" as potentially relevant but unfairly prejudicial. The trial court did not abuse its discretion by finding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.[1]

## D.  SUBSEQUENT SEXUAL JOKE

Defendant objects to the admission of evidence that, while he was in jail awaiting trial in this case, he told a gross and sexually charged joke to his adult girlfriend during a telephone call, and the girlfriend's 15-year-old daughter, who defendant knew was in the car, heard the joke. Defendant's argument hinges on his contention that he did not know that he was on speaker phone and that the daughter could hear him. The joke was relevant to defendant's credibility, particularly to his claim that he had grown as a person and that the joke in which he showed his testicles to one of the stepdaughters was inadvertent or out of character. The call itself was played for the jury, which was in the best position to determine whether defendant was really unaware of (or unconcerned about) whether the daughter could hear him. Defendant has not, therefore, satisfied his burden of showing that the call was either irrelevant or that any relevance was significantly outweighed by the danger of unfair prejudice.

## E.  OTHER ACTS OF DOMESTIC VIOLENCE

Defendant argues that the other-acts evidence to which his former relationship partners testified was different from any of the acts with which he was charged and showed, at the most, that he was abusive toward adults without any suggestion that he had a propensity to sexually or physically abuse children. Because this argument overlooks important context, we disagree.

In a domestic-violence case in which the victim had admittedly lied in the past, the fact that the defendant had abused a different partner, even though the other acts were different from the charged acts, was relevant to understand the relationship between the defendant and the victim

---

[1] Defendant points out that his phone had no passcode, so anyone could have performed the search. This fact, however, could have benefited his theory of the defense that he was being set up.

and to assess the victim's credibility. *Meissner*, 294 Mich App at 443-444, 451-452. Similarly, while the other acts here may have been dissimilar to the charged acts, those other acts were nevertheless highly relevant to the credibility of key witnesses and therefore admissible under MCL 768.27b.

A significant portion of defendant's strategy was undermining his second wife's credibility and suggesting that no sexual or physical abuse of the children really occurred, that defendant was merely a strict parent with a bad sense of humor, and that his second wife was a serial manipulator who engineered the allegations for revenge after defendant became tired of her and tried to recover a vehicle that was in his name. Although some of the other acts took place a significant time in the past, the fact that the witnesses had similar experiences over a long period of time was probative of defendant's credibility when he claimed to have grown as a person despite having admittedly once been an abusive person. Defendant argues that there would be no need for the other-acts evidence if the victims' testimony was credible. Defendant ignores, however, the fact that two of defendant's other former relationship partners testified that their relationship experiences with defendant were similar to his second wife's relationship experiences made it more probable that his second wife was telling the truth and, therefore, that the children were also telling the truth.

The trial court did not abuse its discretion by declining to exclude the evidence as significantly more unfairly prejudicial than probative.

## IV. SENTENCING

Defendant lastly argues that he is entitled to resentencing for his CSC-I conviction because the trial court erroneously assessed 10 points for OV 9, and a deduction of those points would change his minimum sentencing guidelines range. The prosecution concedes that 10 points should not have been assessed for OV 9.[2] We agree.

"This Court reviews for clear error a trial court's findings in support of particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v McFarlane*, 325 Mich App 507, 531-532; 926 NW2d 339 (2018). Offense variable 9 addresses the number of victims, and the court must assess 10 points if two to nine victims "were placed in danger of physical injury or death[.]" MCL 777.39(1)(c). Although a person may be a "victim" under OV 9 merely through "a close proximity to a physically threatening situation," "OV 9 may not be scored on the basis of conduct outside the particular criminal transaction that gave rise to the sentencing offense." *People v Baskerville*, 333 Mich App 276, 294; 963 NW2d 620 (2020) (quotation marks and citation omitted). Thus, a court may assess 10 points under OV 9 for a criminal sexual conduct offense if other potential victims were sleeping nearby "while the defendant was sexually assaulting his chosen victim." *People v Carlson*, 332 Mich App 663, 672; 958 NW2d 278 (2020) (quotation marks, brackets, and citation omitted).

---

[2] The prosecutor asserts that she will seek 10 points for OV 10 when defendant is resentenced for his CSC-I conviction.

Defendant only challenges his sentence for CSC-I. The victim of this crime was the middle stepdaughter, who described several incidents that could potentially have supported a CSC-I conviction. Significantly, however, during each of those incidents, the middle stepdaughter unequivocally described how defendant isolated her from everyone else first—either by ensuring that the house was empty or by moving her to an isolated location, like a boat or a tent. Thus, defendant is correct that only one victim was in danger of physical injury or death as a victim during the sentencing offense. The trial court erred by assessing 10 points for OV 9 for defendant's CSC-I conviction. As scored, defendant's total OV score was 60 points, and a reduction of 10 points would change his minimum sentencing guidelines range. MCL 777.62. Therefore, defendant is entitled to resentencing for CSC-I. *People v Carter*, 503 Mich 221, 230; 931 NW2d 566 (2019).

## V. CONCLUSION

Although we affirm defendant's convictions and remaining sentences, we vacate the portion of the judgment of sentence pertaining to defendant's CSC-I conviction and we remand for resentencing solely on that conviction. We do not retain jurisdiction.


/s/ Christopher M. Trebilcock
/s/ Mark T. Boonstra
/s/ Anica Letica